**William J. SHEPPARD, Jr. and Patricia A. Sheppard, Plaintiffs,**

v.

**JACKSONVILLE MARINE SUPPLY, INC., Thomas Shanty, and Michael Sharrow, Defendants.**

**Civ. A. No. 2:93–3194–18.**

United States District Court, D. South Carolina, Charleston Division.

Feb. 22, 1995.

---

Joseph C. Wilson, IV, Robert H. Hood, Carl Everette Pierce, II, Charleston, SC, for plaintiffs.

Paul A. Dominick, Hanna Casper George, Charleston, SC, for defendants.

## *ORDER*

NORTON, District Judge.

This action came for hearing before the court on Defendants' Motion to Dismiss the Amended Complaint for lack of personal jurisdiction and improper venue pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3), or in the alternative for an order transferring venue to the Middle District of Florida, Tampa Division. In addition to oral argument heard on January 3, 1995, this court considered the pleadings and memoranda filed by the parties. Because this court finds that jurisdiction is proper over Jacksonville Marine Supply, Inc. and Thomas Shanty, and venue is proper in this district, Defendants' motion to dismiss those two Defendants is denied. However, because this court finds it cannot exercise jurisdiction over Michael Sharrow, he is hereby dismissed from this action.

### *I. BACKGROUND*

This case arises as a result of a financial transaction involving Plaintiffs William A. Sheppard and Patricia J. Sheppard and Defendants Jacksonville Marine Supply, Inc. ("Jax Marine"), Thomas Shanty, the corporate president of Jax Marine, and Michael Sharrow, the corporate vice-president of Jax Marine. The exact nature of the transaction is in dispute.[1]

Jax Marine is a Florida corporation with its principal place of business in St. Petersburg, Florida. Defendants Thomas Shanty

---

1. Whether this transaction was a loan, a stock purchase investment, or a stock purchase converted into a loan is disputed by the parties. Therefore, throughout this order the court may interchangeably refer to the transaction as either a loan, an investment or a stock purchase although that question remains unresolved.

and Michael Sharrow reside in St. Petersburg, Florida. In addition to its headquarters in St. Petersburg, Jax Marine maintains warehouses and sales facilities in Jacksonville, Florida and Hanahan, South Carolina. The Jax Marine warehouse in South Carolina operates under the name "C–Mar Division" and employs fourteen people. The employees include three salespersons, warehouse workers, telephone operators and a billing person. According to Plaintiffs, Jax Marine distributes between two to three million dollars of sales inventory from its South Carolina location representing approximately twenty-five to thirty percent of its total sales, and the warehouse serves as the sales and shipping facility for products shipped to Georgia, Virginia, and the Carolinas. Plaintiffs also contend that Marinex, a wholly owned subsidiary of Jax Marine, distributes up to one million dollars worth of products from the warehouse, also representing between twenty-five to thirty percent of Marinex's annual sales.

Commencing in the mid eighties, Jax Marine rented the warehouse in Hanahan, South Carolina from Plaintiffs. Since then, Mr. Shanty has traveled to South Carolina approximately twice a year to meet with his employees at C–Mar. Mr. Sharrow has occasionally traveled to South Carolina on Jax Marine business. In 1988, Defendants Shanty and Sharrow purchased the warehouse taking back a mortgage from Plaintiffs. The individual Defendants now rent the warehouse to Jax Marine. Plaintiff William Sheppard was employed by Jax Marine as manager of the Hanahan warehouse from around July 1992 until September 1993, and Plaintiff Patricia Sheppard was employed as a computer operator by Jax Marine commencing August 1992 and was still so employed as of November 30, 1994.

In the late 1980s, Mr. Sheppard and Shanty apparently began discussing the possibility of Sheppard's investing in Jax Marine. According to Sheppard, he initially expressed this desire to Shanty when Shanty was visiting in South Carolina. This expression of interest led to numerous telephone conversations between Shanty in Florida and Sheppard in South Carolina. Plaintiffs also state that they discussed this topic over dinner one night in Charleston with Shanty and his wife although Shanty denies ever discussing the transaction while in South Carolina. Sharrow contends that he never discussed nor solicited the business transaction with Mr. Sheppard prior to its fruition, a fact that Plaintiffs concede. The negotiations between Sheppard and Shanty led to a transaction in February 1988 in which Sheppard delivered to the Jax Marine headquarters in Florida a $300,000 check for twenty shares of stock in Marinex Corporation, a newly developed and wholly owned subsidiary of Jax Marine. Marinex is a Florida corporation incorporated in 1987 as a wholesale supplier of imported marine bulk hardware. After the transaction, the Sheppards owned twenty percent of Marinex while Jax Marine owned the remaining eighty percent.

In their Amended Complaint, Plaintiffs contend the financial transaction, although initially in the nature of a stock purchase of Marinex stock, was later replaced by agreement of the parties by a twenty-five percent stock acquisition in Jax Marine and even later converted to a loan secured by stock in either corporation. Plaintiffs further allege that the loan was to be repaid in a single lump sum payment of $600,000 on or about February 25, 1993, which was approximately five years after the money was tendered. Sheppard states that he was treated as a partner in Jax Marine subsequent to the transaction and that throughout the "period of the loan," both Shanty and Sharrow assured him in person and via telephone that the money would be repaid.

Apparently, Marinex is now insolvent and although Plaintiffs have demanded a return of their initial payment, they have received no money from Defendants. The gravamen of the Sheppards' complaint is that the Defendants' refusal or inability to repay the money is a result of fraudulent activities between Jax Marine and Marinex. In their Amended Complaint, Plaintiffs assert causes of action based on breach of contract, fraudulent conveyance, breach of fiduciary duty, constructive fraud, common law fraud, and breach of contract accompanied by a fraudulent act. Defendants argue that the transac-

tion was an investment in the form of a stock purchase agreement and that after the investment Marinex incurred considerable losses as a result of a marine industry recession and that Plaintiffs' loss is a legitimate business loss.

## II.  ANALYSIS

Defendants' moved to dismiss this action based on Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction over each Defendant and 12(b)(3) for improper venue.  This court will first address the personal jurisdiction arguments raised by Defendants.

■ When a court's jurisdiction over a defendant is contested, the plaintiffs have the burden of proving facts necessary to support personal jurisdiction.  *Ryobi America Corp. v. Peters,* 815 F.Supp. 172, 175 (D.S.C.1993) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)).

> While plaintiffs' written allegations of jurisdictional facts are generally construed in their favor, their showing of personal jurisdiction must be based on specific facts set forth in the record in order to defeat defendants' motion to dismiss.  "In reviewing the record before it, a court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment."

*Magic Toyota v. Southeast Toyota Distributors,* 784 F.Supp. 306, 310 (D.S.C.1992) (citations omitted) (quoting *VDI Technologies v. Price,* 781 F.Supp. 85, 87 (D.N.H.1991)).

■ Plaintiffs argue that this court can find that either specific or general jurisdiction exists over each Defendant.  When a court exercises jurisdiction over a suit that does not arise out of a defendant's activities in the forum state, such jurisdiction is called "general jurisdiction."  *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984).  Jurisdiction over a suit that arises out of or is related to a defendant's activities in the forum state is called "specific jurisdiction."  *Id.* at 414 n. 8, 104 S.Ct. at 1872 n. 8.  In analyzing jurisdictional

challenges against multiple defendants, this court must consider each defendant separately.  *Magic Toyota,* 784 F.Supp. at 313.

The Fourth Circuit recently reiterated the proper constitutional test for personal jurisdiction in *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939 (4th Cir.1994).  The court stated:

> [W]e hold that the test to be applied in considering the reach of personal jurisdiction inquires whether (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.

*Id.* at 945–46.  (citing *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)).  With this test in mind, the court will consider the facts of the case to determine whether South Carolina can assert personal jurisdiction over Jax Marine, Thomas Shanty or Michael Sharrow.

### A.  Specific Jurisdiction

■ In South Carolina, specific jurisdiction over a cause of action arising from a defendant's contacts with the state is granted pursuant to the long arm statute.  South Carolina's long arm statute states:

> (1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's
>
> (a) transacting any business in this State;

(b) contracting to supply services or things in the State;

(c) commission of a tortious act in whole or in part in this State;

(d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State; or

(e) having an interest in, using, or possessing real property in this State; or

(f) contracting to insure any person, property or risk located within this State at the time of contracting; or

(g) entry into a contract to be performed in whole or in part by either party in this State; or

(h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

(2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him....

S.C.Code Ann. § 36-2-803 (Law Co-op.1976). This statute has been interpreted to extend jurisdiction to the limits allowed by the Due Process Clause. *Triplett v. R.M. Wade & Co.*, 261 S.C. 419, 200 S.E.2d 375, 378–79 (1973). As such, the court's inquiry is "limited to whether an exercise of jurisdiction over each Individual Defendant under the circumstances of this case is consistent with Due Process since the test of amenability under the state law and under the constitutional test are identical." *Magic Toyota*, 784 F.Supp. at 312 (citing *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052 (4th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984)). As this court stated in *Magic Toyota:*

In order to establish that a non-resident defendant has had minimum contacts with the forum state, plaintiffs must show a "sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum."

Plaintiffs may satisfy this burden if they show that there has been some act related to the cause of action alleged by which each non-resident defendant purposefully availed himself or herself of the privilege of conducting activities within the forum state.

*Id.* at 312–313 (citations omitted) (quoting *Kulko v. California Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978) and citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)).

■ This court finds that South Carolina has personal jurisdiction over Jax Marine's corporate president, Thomas Shanty. Shanty states he never "discussed the Marinex stock purchase with Billy or Patricia Sheppard in South Carolina." Even though Shanty is a Florida resident, he is part owner of the Hanahan warehouse and he states in his affidavit that he travels to South Carolina approximately twice a year as the president of Jax Marine. On the other hand, William Sheppard states that he and Shanty initially discussed the potential of some type of "safe investment" during one of Shanty's trips to South Carolina, that Shanty made numerous phone calls to South Carolina to discuss the matter, and that Shanty and his wife discussed the investment over dinner one night in Charleston with Sheppard and his wife. Most of these claims are also made by Patricia Sheppard in her affidavit. Finally, William Sheppard alleges that Shanty in addition to Sharrow "[t]hroughout the period of the loan.... repeatedly discussed the loan with me and assured me of repayment in person in South Carolina and by way of telephone calls to me in South Carolina."

Construing the Plaintiffs' written allegations of jurisdiction in their favor, this court finds that Shanty has created a substantial connection to South Carolina and in so doing has purposefully availed himself of the privilege of conducting business in this state.

The United States Supreme Court, the South Carolina Supreme Court, and the lower federal courts construing cases arising in South Carolina, have all held that a single contact with this state is sufficient to

give the forum personal jurisdiction over the defendant when that contact gives rise to, or figures prominently in, the cause of action under consideration.

*Long v. Baldt*, 464 F.Supp. 269, 275 (D.S.C. 1979) (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193 (4th Cir.1976); *Ross v. American Income Life Ins. Co.*, 232 S.C. 433, 102 S.E.2d 743 (1958)). Considering Shanty's trips to South Carolina, the duration of his involvement with the Sheppards in connection with Jax Marine and Marinex, the rather significant monetary amount of the transaction, and the Plaintiffs' assertions that the original agreement was later altered at least twice prior to their demand for reimbursement, it is more likely than not that the transaction was discussed in South Carolina at some time. In this court's opinion, Shanty has the requisite minimum contacts that figure predominantly in the Plaintiffs' causes of action to allow this court to exercise personal jurisdiction over him.

■ Additionally, this court finds that exercising personal jurisdiction over Shanty does not offend the traditional notions of fair play and substantial justice. William Sheppard, a South Carolina citizen, has stated that the "burden of pursuing this matter in Florida would be prohibitive. Because of Defendants' refusal to return *any* of the funds I loaned them, I am currently suffering from a serious cash flow problem that would make it virtually impossible to litigate this matter in Florida." On the other hand, the burden on Shanty will not be as great considering his business interests in South Carolina and his regular travels to the state. Further, the State of South Carolina has an interest in resolution of this dispute allegedly causing financial hardship to two of its citizens. Therefore, this court finds that the exercise of personal jurisdiction over Shanty meets the due process test set forth in *Lesnick*.

■ Turning to the corporate Defendant Jax Marine and its vice president, Sharrow, this court finds that the exercise of specific jurisdiction over these Defendants would not comport with the Due Process Clause. Although Sharrow owns the Jax Marine warehouse in Hanahan with Shanty, Sharrow did not negotiate the financial transaction with the Plaintiffs and rarely travels to the state. Recognizing that a defendant does not have to ever have been physically present in a state to be amenable to its jurisdiction, Plaintiffs have not made any specific allegations against Sharrow that connect him significantly to their causes of action. Addressing this same issue in *Magic Toyota*, this court stated:

> "[W]hat is required is some showing of direct, personal involvement by the corporate officer in some decision or action which is causally related to the plaintiff's injury." Such direct personal involvement typically exists "where the defendant [agent is] the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity."

*Magic Toyota*, 784 F.Supp. at 315 (discussing the holding in *Columbia Briargate* and quoting *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 902, 907 (1st Cir.1980)). Although this court believes that Plaintiff has set forth enough facts to demonstrate that Shanty had some direct personal involvement in the decisions and actions surrounding the financial transaction that resulted in this suit, such direct involvement of Sharrow has not been demonstrated.

Plaintiffs primarily rely on *Long v. Baldt*, 464 F.Supp. 269 (D.S.C.1979) and *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522 (4th Cir.1987) in arguing that this court can assert personal jurisdiction over Sharrow. Those cases are distinguishable from the facts at hand. In *Long* the court found jurisdiction over a nonresident co-trustee in spite of the fact that he had never visited the state. The court's opinion depended in large part on the fact that the trust property that figured predominantly in "a major part of the alleged mismanagement" comprising the cause of action was located in South Carolina, 464 F.Supp. at 273–74 and also because as a co-trustee, it was in the defendant's best interest to appear in South Carolina because he was ultimately "jointly and severably liable for losses

occasioned by the breach of trust." *Id.* at 275 n. 8.

*Pittsburgh Terminal* was a shareholder's derivative suit brought by minority shareholders against nonresident corporate officers. However, the corporation at issue was a resident corporation subject to the laws of the state in which it was incorporated and whose president had an office within the state. 831 F.2d at 527–28. Additionally, the corporate officers over whom jurisdiction was exercised had significant contacts with the state, and the litigation was a direct result of some of the specific activities of the corporation that were governed by the resident state's corporate law. *Id.* at 524, 527. In *Pittsburgh Terminal*, the Fourth Circuit stated

> [I]t is not necessary that the defendant ever actually enter the forum State's territory; so long as the defendant has purposefully directed his activities toward the forum State, and the litigation arises from those activities, due process is satisfied.

*Id.* at 525.

In the matter at hand, other than general allegations that the mismanagement of Jax Marine by the individual defendant Sharrow resulted in Plaintiffs' loss of money in Marinex, the litigation does not directly arise as a result of Sharrow's involvement with the Jax Marine warehouse in South Carolina and its sales and distribution activities within the state. Sharrow is a nonresident corporate officer of a nonresident Florida corporation which is governed by Florida law. The allegations asserted against Sharrow are general in nature. Although William Sheppard states that Sharrow, in addition to Shanty, discussed the loan with him and assured him of repayment, he admits that Sharrow never negotiated the terms of the transaction with him prior to its fruition. Sharrow's contacts with the forum state are not substantial enough to support jurisdiction over causes of action unrelated to those activities.[2] *See Keeton v. Hustler Magazine, Inc.,* 465 U.S.

770, 779, 104 S.Ct. 1473, 1480–81, 79 L.Ed.2d 790 (1984). Therefore, this courts finds that South Carolina's exercise of specific personal jurisdiction over Sharrow would violate the Due Process Clause.

■ With respect to the corporate Defendant Jax Marine, this court finds that its activities in the state are not sufficiently connected with the causes of action to allow this court to exercise specific jurisdiction. Plaintiffs allege that Marinex's insolvency and their loss arise from the transfer of money by fraudulent means from Marinex to its parent, Jax Marine. They state:

> Defendants operate Marinex in precisely the same manner as Jacksonville Marine and use Jacksonville Marine's network to distribute their products. Indeed, it would seem that Jacksonville Marine simply inserts itself as a middle-man by buying Marinex's products for distribution. It is these very activities that have resulted in consistent unexplained and unjustified losses to Marinex, which has been financially drained by a disfavorable sales relationship with its parent company. This is the crux of the Complaint. More importantly, a significant portion of these activities took place in South Carolina.

Pls. Mem. Opp. at 18–19. Although Plaintiffs argue otherwise, this court finds that there is a "lack of a 'rational nexus'" between the forum state and the relevant facts surrounding the claims presented." *Ratliff v. Cooper Laboratories,* 444 F.2d 745, 748 (4th Cir.) (citing *Curtis Publishing Co. v. Birdsong,* 360 F.2d 344, 346 (5th Cir.1966)), *cert. denied,* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265 (1971). Therefore, this court refuses to exercise specific personal jurisdiction over the corporation.

### B. General Jurisdiction

■ Although this court finds that the causes of action asserted by Plaintiffs do not arise as a result of the corporation's contacts

---

**2.** Plaintiffs argue that specific jurisdiction is proper over Sharrow under S.C.Code § 36–2–803 by asserting that the fraudulent devaluation of Marinex took place, in part, in South Carolina at the Hanahan warehouse. It is the opinion of this court that to exercise specific jurisdiction

over Sharrow as to Plaintiffs' contract and fraud causes of action would require Sharrow's activity in the state to be more directly related to those causes of action. To exercise jurisdiction otherwise would offend the "traditional notions of fair play and substantial justice."

with the state, this court finds that Jax Marine's contacts with the state are continuous and substantial enough for the court to exercise general jurisdiction over the corporation. South Carolina's general jurisdiction statute states:

A court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, doing business, or maintaining his or its principal place of business in, this State as to any cause of action.

S.C.Code Ann. § 36–2–802 (Law Co-op.1976).

In *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195 (4th Cir.1993), the Fourth Circuit discussed the due process limitations of the exercise of general jurisdiction:

When, as in the case at bar, a suit does not arise out of the defendant's activities in the forum state, the court must exercise "general jurisdiction" and the requisite "minimum contacts" between the defendant and the forum state are "fairly extensive." "Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction]." Even "continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation]." Only when the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction over a corporate defendant.

*Id.* at 1199 (citations omitted) (citing *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir.), *cert. denied,* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265 (1971), and quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 317, 318, 66 S.Ct. 154, 158, 158–59, 159, 90 L.Ed. 95 (1945)).

In *Nichols* the court upheld the finding that general jurisdiction did not exist over the corporate defendant. In doing so, the court recognized that none of the plaintiffs were residents of the state attempting to exercise jurisdiction, *id.* at 1199 n. 3, and reiterated the general proposition that corporate advertising and solicitation activities alone do not constitute the minimum contacts required for general jurisdiction. *Id.* at 1200 (citing *Ratliff,* 444 F.2d 745). However, in the case at bar, Plaintiffs are residents of the state attempting to exert jurisdiction and the activity of Defendant corporation Jax Marine is much more substantial than the mere sales and solicitation activity of the defendant corporation in *Nichols. See id.* at 1200. Jax Marine has maintained a warehouse in Hanahan since at least 1986 and at the time of the suit, employed approximately fourteen people. Although no manufacturing is accomplished there, the warehouse is used as a base for its sales force and as one of three of Jax Marine's major shipping facilities from which its goods are shipped to Georgia, Virginia, and North Carolina. Further, to fill sales orders, a significant amount of Jax Marine's inventory is located at the South Carolina warehouse. Plaintiffs allege that a large amount of Marinex inventory is also stored at and distributed from the warehouse. It is the opinion of this court that the activity of the Jax Marine warehouse is the type of continuous corporate operation that justifies the exercise of general jurisdiction over Jax Marine.

█ This court further finds that it cannot exercise general jurisdiction over Mr. Sharrow because his contacts with the state—the part ownership of the Hanahan warehouse and his infrequent travels to the state—are not substantial and continuous enough to allow the exercise of general jurisdiction over causes of action unrelated to those activities.

### C. Venue

Having denied Defendants' Motion to dismiss Jax Marine and Thomas Shanty, this court now addresses Defendants' request to dismiss for improper venue. The statute states:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in

. . . . .

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a sub-

stantial part of property that is the subject of the action is situated.

28 U.S.C. § 1391(a)(2).

When venue is challenged, it is the burden of the plaintiff to prove that venue is proper in the forum state. *Magic Toyota,* 784 F.Supp. at 316 (citing *Bartholomew v. Virginia Chiropractors Ass'n,* 612 F.2d 812, 816 (4th Cir.1979), *cert. denied,* 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980)). This section does not require this court to find that venue is proper in only one district. *Andrean v. Secretary of the Army,* 840 F.Supp. 1414, 1423 (D.Kan.1993). However, plaintiffs have the burden of proving that venue is proper as to each claim asserted in their complaint and as to each defendant. *Magic Toyota,* 784 F.Supp. at 316. *But see id.* at 317 n. 19. Therefore, the Sheppards have the burden of proving that venue is proper as to Jax Marine and Mr. Shanty with respect to causes of action for breach of contract, fraudulent conveyance, breach of fiduciary duty, constructive fraud, common law fraud, breach of contract accompanied by a fraudulent act, unfair trade practices and conversion.

Although this court recognizes that Florida is also an appropriate venue in that a substantial part of the events relating to these causes of action occurred in St. Petersburg at the corporate headquarters of Jax Marine, this court finds that this district is not inappropriate in that a substantial part of events giving rise to the claims also occurred here. The comments to 1990 revisions to section 1391(a)(2) explain:

> The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as "substantial" activities took place in A, too. Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial. Any other approach would restore the pinpointing problem that created the difficulties under the now discarded "claim arose" standard. If the selected district's contacts are "substantial",

it should make no difference that another's are more so, or the most so.

David D. Siegel, Commentary on the 1988 and 1990 Revisions of Section 1391, Subdivision (a), Clause (2), 28 U.S.C.A. § 1391 (1993); *see National Cathode Corp. v. Mexus Co.,* 855 F.Supp. 644, 647–48 (S.D.N.Y.1994); *VDI Technologies v. Price,* 781 F.Supp. 85, 94–95 (D.N.H.1991). The claims in this case all center around the financial agreement between Thomas Shanty and the Sheppards with respect to Marinex and Jax Marine stock. The purpose of Shanty's numerous trips to South Carolina was to visit the Jax Marine warehouse in Hanahan. Plaintiffs allege that the initial discussion and later negotiations concerning this transaction occurred in South Carolina. Plaintiffs also state the transaction was the topic of a dinner in Charleston and that Defendant Thomas Shanty discussed the agreement with Plaintiffs on his numerous visits to South Carolina reassuring them of eventual repayment over the five years prior to their ultimate demand for repayment. These allegations are sufficient for the court to find that a substantial part of the events occurred in South Carolina and therefore venue is proper for the allegations against both Jax Marine and Mr. Shanty.

### III. CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE**

**ORDERED** that Defendants' Motion to Dismiss this action against Defendants Jacksonville Marine and Thomas Shanty for lack of personal jurisdiction and improper venue is hereby **DENIED.**

**ORDERED** that Defendants' Motion to Dismiss this action against Michael Sharrow for lack of personal jurisdiction is hereby **GRANTED.**

**ORDERED** that Defendants' request to transfer venue to the Middle District of Florida, Tampa Division is hereby **DENIED.**[3]

**AND IT IS SO ORDERED.**

---

**3.** This suit was originally filed in November of 1993. Although the court allowed the Plaintiffs

to file an Amended Complaint in June of 1994, that complaint added no new causes of action. This case is currently on the trial docket and a jury will be drawn in this case on March 13, 1995 for a trial to be held in March or April.