EMJAYCO, for Benefit of BART L. TROY, M.D. P.C., PROFIT SHARING PLAN, M.M. Sternstein, D.D.S., Ltd. Employee Profit Sharing Plan, Southern Illinois Head, Neck & Hearing SC Profit Sharing Savings Plan And Trust, Joel Sternstein, Michele K. Troy, for themselves, individually, and on behalf of all others similarly situated, Plaintiffs,

v.

MORGAN STANLEY & CO., INC., a Delaware corporation, John M. LeFrere, the Estate of William H. Gregory, III, and John or Jane Does One Through Five, Defendants.

No. 95–3158.

United States District Court,
C.D. Illinois,
Springfield Division.

Oct. 4, 1995.

George B. Gillespie, Hinshaw & Culbertson, Springfield, IL, Bradford J. Lam, Cairns Dworkin & Chambers P.C., Denver, CO, for plaintiffs.

Paul Brown, Brown Hay & Stephens, Springfield, IL, Roger J. Hawke, I. Scott Bieler, Cathleen N. Tiernan, Brown & Wood, New York City, for Morgan Stanley & Company, Inc.

Thomas J. Thomas, Juno Beach, FL, John M. LeFrere, West Palm Beach, FL, pro se,

Robert B. McKay, Carney & McKay, Garden City, NY, for John LeFrere.

## *OPINION*

RICHARD MILLS, District Judge:

Venue.

Keep it, or transfer?

Alas, we must transfer to our sister court in New York.

### I. BACKGROUND

This case involves a dispute between investors, an investment manager, and a brokerage house. During the 1980s, the Plaintiffs, primarily physicians, office profit sharing plans, and pension trusts, invested in two partnerships, which in turn invested in Delta Capital Management, a limited partnership. Plaintiffs allege that although Delta held itself out as fundamentally conservative, it, unbeknownst to its investors, shifted from a conservative investment strategy to a high risk strategy. The focus of this strategy shift was massive investment in First Executive, a company which eventually collapsed. Plaintiffs claim that Delta conspired with its broker, Morgan Stanley, and unspecified others to make First Executive seem to be something it was not: a desirable takeover target. This was done, claim the Plaintiffs, by stock churning and other deceptive practices.

As to the parties, Plaintiffs were partners of Springfield Associates or Springfield Retirement Associates. These two partnerships were limited partners in Delta. Delta was a Delaware limited partnership with offices in New York. Morgan Stanley is a Delaware Corporation with its principal place of business in New York, New York. John LeFrere is either a Florida or New York resident and a general partner of Delta Capital Management, L.P. (Delta), The Estate of William H. Gregory III succeeds William H. Gregory III, a former general partner of Delta.

Morgan Stanley moves for transfer of venue and asserts that no substantial acts or omissions giving rise to the claims against it occurred in this district. Plaintiffs, to successfully oppose Morgan Stanley's motion, must prove that venue is proper in this district.

Plaintiffs' lengthy complaint contains very few factual allegations regarding Morgan Stanley's [1] conduct. The section of the complaint entitled "Course of Wrongful Conduct" describes Morgan Stanley's alleged role in the scheme to defraud.

According to the Complaint, Morgan Stanley was engaged in the business of trading securities for LeFrere and his associates. Morgan Stanley "and/or its agents" made recommendations to LeFrere and his associates regarding trading in accounts alleged to be the Plaintiffs'. Morgan Stanley had actual or constructive knowledge of Plaintiffs' desire to invest conservatively in a diversified portfolio. Morgan Stanley knew that LeFrere, Gregory, and Delta were unlicensed to act as either investment advisors, an investment company, or an introducing broker-dealer. Morgan Stanley prepared account statements that indicated numerous trades in First Executive securities over repeated one-month intervals. Morgan Stanley did not disclose to Plaintiffs various pieces of information regarding Delta, LeFrere and First Executive.

Morgan Stanley submitted an affidavit with its motion to transfer. This affidavit states that Morgan Stanley acted as a prime broker for Delta. Prime brokers provide a variety of services for large investors who deal with several broker-dealers. Morgan Stanley served Delta through its New York, New York, office.

### II. VENUE AND TRANSFER

■ Plaintiffs argue that venue is proper in this district because "a substantial part of the events or omissions giving rise to the claim occurred" in this district. 28 U.S.C.

---

1. An initial source of confusion is Plaintiffs' use of the term "defendants." Plaintiffs switch between naming specific defendants as actors at various stages of the alleged wrongful conduct and simply using the label "defendants". It is not always clear whether Plaintiffs intend to implicate all the defendants or simply the most logically implicated ones. The Court has attempted to construe the term "defendants" logically.

1391(a)(2). Morgan Stanley moves for transfer pursuant to 28 U.S.C. § 1406(a), which provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer the case to any district or division in which it could have been brought." When a defendant challenges venue, the plaintiff bears the burden of establishing that its chosen venue is proper. *Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F.Supp. 260, 269 (D.S.C. 1995); *Reed v. Brae Railcar Management, Inc.*, 727 F.Supp. 376, 377 n. 1 (N.D.Ill.1989). The purpose of general venue statutes [2] is to protect defendants from litigation in inconvenient fora. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84 (1979). *But see Carty v. Health–Chem Corp.*, 567 F.Supp. 1 (E.D.Pa.1982) (discussing venue under the Securities Exchange Act of 1934, which requires only an act in furtherance of an unlawful scheme in the forum). Plaintiffs must, therefore, show that venue is proper as to all defendants and all claims. *Jarrett v. North Carolina*, 868 F.Supp. 155, 158 (D.S.C.1994); *Payne v. Marketing Showcase, Inc.*, 602 F.Supp. 656, 658 (N.D.Ill.1985) ("[W]here multiple causes of action are joined, venue must be proper as to each one."). Despite the venue statute's recent revision, Pub.L.Judicial Improvements Act of 1990, No. 101–650, Title III, § 311, which replaced venue based on where the cause of action arose with venue based on substantial acts, venue must still be established as to each defendant. *See Sheppard*, 877 F.Supp. at 269, *Shuman v. Computer Associates International, Inc.*, 762 F.Supp. 114, 115 (E.D.Pa. 1991). *But see Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc.*, 784 F.Supp. 306, 317 n. 19 (D.S.C.1992) (asserting that by shifting the emphasis from contacts to events, the venue statute's amendment supplanted the rule that venue must be proper as to each defendant). The purpose of the venue statute is still to protect defendants, but the statute does not protect defendants if it allows plaintiffs to establish venue as to

several defendants simply because venue is proper there as to one defendant.

 Courts decide questions of venue largely on the basis of the pleadings. Because venue and personal jurisdiction are similar, it is appropriate to apply the same evidentiary standard to both issues. *Reed,* 727 F.Supp. at 377 n. 1. "The allegations in [Plaintiffs'] complaint are to be taken as true unless controverted by the defendant's affidavits; and any conflicts in the affidavits are to be resolved in [Plaintiffs'] favor." *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir. 1987). The Court is not obliged, however, to treat all allegations as true, no matter how speculative, conclusory, or lacking of necessary supporting factual allegations. *Matter v. Williams,* 832 F.Supp. 244, 246 (C.D.Ill. 1993). Instead, the Court's function in deciding factual questions related to venue is similar to its function when reviewing a motion to dismiss. To survive a motion to dismiss, a complaint must allege a factual basis for its legal claims. *Cushing v. City of Chicago,* 3 F.3d 1156, 1161 n. 5 (7th Cir.1993) (" '[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss.' *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd* 460 U.S. 325, [103 S.Ct. 1108, 75 L.Ed.2d 96] (1983)."). Therefore, to defeat a motion for transfer, a plaintiff must allege or establish facts to support venue in its chosen district.

### III. ANALYSIS

### A. *Plaintiffs Must Connect Morgan Stanley to Actions Taken Within This District*

 Plaintiffs have alleged only one act by Morgan Stanley outside of New York: the appearance of a representative of Morgan Stanley at one of Delta's annual meetings in Springfield, Illinois. Plaintiffs make no allegation as to what Morgan Stanley's representative said or did at that meeting. The substance of Plaintiffs' complaint is that a series of fraudulent misrepresentations and improper securities transactions caused their losses.

---

**2.** 28 U.S.C. § 1391 is a general venue statute. Its purpose differs from the venue provisions for specialized causes of action, such as patent infringement, 28 U.S.C. § 1400, or stockholders' derivative suits, 28 U.S.C. § 1401, or RICO, 18 U.S.C.1965(a).

A single appearance by a representative of Morgan Stanley, at which Plaintiffs do not allege the representative took any significant action, cannot possibly constitute "a substantial part of the events or omissions giving rise" to the claim against Morgan Stanley. Plaintiffs, therefore, must demonstrate how various actors' conduct within this district can be imputed to Morgan Stanley, whose only substantial acts occurred in New York.

■ Plaintiffs' first attempt to justify venue in this district is the "conspiracy theory of personal jurisdiction." Assuming Plaintiffs mean the co-conspirator theory of venue, they quickly, and wisely, abandon this theory. Except for some specialized venue provisions, the co-conspiracy theory of venue is invalid. *Sportmart, Inc. v. Frisch,* 537 F.Supp. 1254, 1259–60 (N.D.Ill.1982) ("Most courts that have considered the so-called co-conspirator theory of venue after the Supreme Court's dictum in *Bankers Life & Casualty Co. v. Holland,* [346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953)], have also declined to find venue appropriate over a non-resident corporate defendant solely on the basis of the alleged conduct of its co-conspirators in the forum state.") (further citations omitted). The co-conspiracy theory is available under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa (1994). *See Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1317 (9th Cir.1985). But Plaintiffs have asserted only 28 U.S.C. 1391(a) as a basis for venue.

■ Because plaintiffs cannot justify venue on the grounds of an alleged conspiracy, they must turn to a theory of venue based on agency. Several vehicles exist by which Plaintiffs might hold Morgan Stanley liable for the conduct, in this district, of Delta and its general partners. "The three principal vehicles for imposing such liability are: (1) statutorily created controlling person liability, (2) for [*sic*] the brokerage firm's culpable failure to supervise its employees, and (3) under common law principles of vicarious liability...." 1 Thomas Lee Hazen, Treatise on the Law of Securities Regulation 592 (2d ed. 1990). "Controlling person" liability is imposed by statute, 15 U.S.C. § 77o, 78t (1994), and is "more restrictive than com-

mon law agency theories...." Hazen at 593. *First,* to establish controlling person liability, a plaintiff must, at a minimum, allege that the defendant exercised some control or discipline over the alleged wrongdoer. *See Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 876–82 (7th Cir.1992), *cert. denied* — U.S. —, 113 S.Ct. 2994, 125 L.Ed.2d 688 (1993); *see also Martin v. Shearson Lehman Hutton, Inc.,* 986 F.2d 242, 244 (8th Cir.1993) (noting that a controlling person can be liable for the acts of a person over whom the controlling person exerts any discipline or influence), *cert. denied* — U.S. —, 114 S.Ct. 177, 126 L.Ed.2d 136 (1993). To trigger liability, the control exerted must be "over the specific activity upon which the primary violation is predicated." *Schlifke v. Seafirst Corp.,* 866 F.2d 935, 949–50 (7th cir. 1989). Because Plaintiffs have not alleged facts that would allow the Court to conclude that Morgan Stanley controlled Delta or its general partners, Plaintiffs cannot look to controlling person liability to justify venue in this district.

■ The *second* type of vicarious liability comes from negligent supervision or negligent failure to supervise. *See, e.g., Henricksen v. Henricksen,* 640 F.2d 880, 884 (7th Cir.1981) (describing negligent supervision), *cert. denied sub nom Smith, Barney, Harris, Upham & Co. v. Henricksen,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 637 (1981). This type of liability makes a defendant answer for conduct of persons the defendant could have controlled. Liability for failure to protect a third party from such an actor, however, arises only when a duty to protect exists. *Harrison,* 974 F.2d at 885. In *Harrison,* two of a broker's employees defrauded investors by inducing them to invest in the employee's own accounts. The Seventh Circuit rejected the investors' negligent hiring and retention claims because the investors did not have a relationship to the broker that could establish vicarious liability. *Id.* Plaintiffs repeatedly allege that Morgan Stanley maintained "their" accounts. Morgan Stanley, however, states that none of the Plaintiffs ever had an account with Morgan Stanley. Additionally, the facts asserted in the Complaint do not support the inference that

Plaintiffs had accounts with Morgan Stanley. Instead, it is clear that the only entity with an account at Morgan Stanley was Delta. Plaintiffs have not, therefore, alleged sufficient facts for the Court to conclude that Morgan Stanley was under any duty to supervise Delta in its dealings with Plaintiffs. *Cf. Harrison,* 974 F.2d at 885; *Champion Parts, Inc., v. Oppenheimer & Co.,* 878 F.2d 1003, 1008 (7th Cir.1989) (holding that a claim of negligent supervision under Illinois law could not stand because plaintiff was not a customer of the brokerage firm). Plaintiffs also assert that Morgan Stanley should be liable as a clearing broker for the torts of Delta, an alleged introducing broker. The allegations in the complaint, however, do not support the conclusion that Delta was an introducing broker. Furthermore, a clearing broker is not generally liable for fraudulent misrepresentations made by the introducing broker to its customers. *Katz v. Financial Clearing & Services Corp.,* 794 F.Supp. 88, 94 (S.D.N.Y.1992) ("Neither primary nor aiding and abetting liability attaches to a clearing broker who merely clears trades for an introducing broker.")

■■■■■ The *third* avenue for vicarious liability in this case is through the common law doctrines of agency. Generally, a principal may be liable for the acts of its agents under three theories: actual authority, apparent authority, or inherent authority (respondeat superior). To establish actual authority, it must be shown that a principal actually granted its agent authority to do the act in question. Apparent authority holds a principal liable for acts the agent reasonably appeared authorized to take.[3] The third variety of agency liability arises from agency inherent to an actor's position. *See generally In re Atlantic Financial Management, Inc.,* 784 F.2d 29 (1st Cir.1986) (describing the theories of vicarious liability in securities fraud cases), *cert. denied sub nom AZL Resources, Inc. v. Margaret Hall Foundation,*

*Inc.,* 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877 (1987).

■■■■ The Complaint repeatedly refers to "Morgan Stanley and its agents," or describes LeFrere and the other Delta general partners as agents of Morgan Stanley. These statements are legal conclusions. Without allegations of fact to support these legal conclusions, the Court cannot credit them. *Cushing v. City of Chicago,* 3 F.3d at 1161 n. 5, *Rand Bond of North America, Inc. v. Saul Stone & Co.,* 726 F.Supp. 684 (N.D.Ill 1989) ("[A]gency is a legal relationship whose existence flows from *facts* . . . . it remains incumbent on the pleader to allege *some* factual predicate . . . to create the inference. . . .") (emphasis in original). In addition to their bald allegations of agency, Plaintiffs argue that Morgan Stanley is liable for Delta's conduct because Morgan Stanley knew that LeFrere, Gregory, and Delta were either unlicensed investment advisors, an unlicensed investment company, or an unlicensed introducing broker-dealer. But Plaintiffs fail to assert facts that could lead the Court to conclude that this knowledge triggered liability. *See, e.g., Katz,* 794 F.Supp. at 94 (stating that facts must be pled to demonstrate an exception to the rule that a clearing broker is not liable for an introducing broker's tortious conduct). The Complaint does not allege any facts that might lead the Court to believe that failure to register was improper, or that by failing to do anything about that failure to register, Morgan Stanley should be liable.

Furthermore, Plaintiffs do not allege the existence of master-servant relationship between LeFrere, Gregory, and Delta and Morgan Stanley, nor do Plaintiffs allege any other facts that could lead the Court to conclude that Delta acted on either actual, implied, or inherent authority of Morgan Stanley. Finally, Plaintiffs' memoranda cite no cases holding that agency arose under circumstances similar to those described in the complaint.[4]

---

**3.** "The theory of apparent authority rests on two premises: a manifestation by the principal to a third party, and a belief by that third party that the extent of authority granted to the agent encompasses the contemplated activity." *Simpson v. Compagnie Nationale Air France,* 248 N.E.2d 117, 120 (Ill.1969).

**4.** Plaintiffs argue that Morgan Stanley is liable for various omissions, and that those omissions occurred in this district. The alleged omissions consisted of failing to supervise Delta and its general partners and failing to follow various rules. Those omissions occurred in New York, if anywhere. Morgan Stanley's employees were lo-

## B. *Improper Venue and Transfer*

 For the reasons stated above, the Court concludes that significant acts or omission giving rise to the claim against Morgan Stanley did not occur in this district and that the two other options under 28 U.S.C. § 1391(b) do not apply. Therefore, venue is not proper in this Court. The allegations in the Complaint and the affidavits of Morgan Stanley lead to the conclusion that the Southern District of New York is the appropriate venue for this lawsuit. Morgan Stanley admits that all of the conduct giving rise to Plaintiffs' claim against it occurred in New York. Delta and its general partners are alleged to have conspired with Morgan Stanley to churn stock and defraud investors. Because both Morgan Stanley and Delta operated in New York, the conduct giving rise to these charges apparently occurred in New York. A substantial part of the conduct giving rise to Plaintiffs' claims against Delta and its general partners also occurred in this district. The language and history of 28 U.S.C. § 1391(a)(2), however, make clear that venue may be proper in two or more districts. *Cottman Transmission Systems, Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir. 1994) (noting that the pre–1990 version of § 1391 generally allowed venue in only one district, but that the amended statute allows venue in several). Thus, a substantial part of the events or omissions giving rise to all of Plaintiffs' claims occurred in the Southern District of New York.

### IV. CONCLUSION

The Court finds it in the interest of justice to transfer this case to the Southern District of New York. The only alternative available to the Court is to dismiss this case as to Morgan Stanley. The Court also finds that justice would be served by allowing this case to proceed on its merits. The Court further finds that justice would be better served by keeping the claims in this case together in the same forum, than by splitting them and potentially requiring two trials on largely identical issues.

Because venue is not proper in this Court and because the Court has decided to transfer this case, the Court declines to rule on the pending motions to dismiss and for preliminary injunction.

*Ergo,* Defendant's Motion to Transfer (d/e 22) is ALLOWED. This case is transferred to United States District Court for the Southern District of New York, and all pending proceedings are referred to that court. Because important motions are pending in this matter, transfer is to take effect immediately.

---

cated in New York throughout the alleged course of wrongful conduct. Their conduct, therefore, occurred in New York, and not at the location of the alleged victims. *See Cottman Transmission Systems, Inc. v. Martino,* 36 F.3d 291, 295 (3d Cir.1994).