**Bruce M. FOSTER, Plaintiff–Appellant,**

v.

**ARLETTY 3 SARL; Patrick Abadie, Defendants–Appellees.**

No. 00–2540.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 30, 2001.

Decided Jan. 25, 2002.

---

**ARGUED:** Frank Langston Eppes, Eppes & Plumblee, P.A., Greenville, South Carolina, for Plaintiff–Appellant. William Stevens Brown, V, Nelson, Mullins, Riley & Scarborough, L.L.P., Greenville, South Carolina, for Defendants–Appellees. **ON BRIEF:** Lawrence W. Newman, Rafael E. Castilla, Baker & McKenzie, New York, New York, for Plaintiff–Appellant. Rivers S. Stilwell, Nelson, Mullins, Riley & Scarborough, L.L.P., Greenville, South Carolina; Peter F. Felfe, Leon Medzhibovsky, Fulbright & Jaworski, L.L.P., New York, New York, for Defendants–Appellees.

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge, and Malcolm J. HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge MALCOLM J. HOWARD wrote the opinion, in which Chief Judge WILKINSON and Judge MOTZ joined.

## OPINION

MALCOLM J. HOWARD, District Judge.

Plaintiff-appellant Bruce Foster challenges the district court's determination that the French company with which Foster contracted did not have sufficient contacts with South Carolina to support the assertion of personal jurisdiction over this company and one of its officers. Because the exercise of jurisdiction over these appellees does not comport with "traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)), we affirm the district court's holding.

### I.

Bruce Foster, a dual citizen of the United States and France residing in Greenville, South Carolina, entered into a series of business transactions with a variety of French companies.[1] These transactions included several contracts designed to allow the French companies to obtain licenses for entertainment programs they hoped to promote over the internet. Foster, as a dual citizen, served as the French companies' contact in the United States and

helped secure the rights to the licenses. The contract at the heart of this dispute was negotiated, drafted, and executed in France and called for Foster to obtain the license in exchange for a fee based on the gross revenues of the companies' use of those licenses. Foster eventually obtained the licenses in the name of two French companies partially owned by Foster, Sierra Madre and BSF. The appellees, Arletty 3 S.A.R.L. ("Arletty"), a French corporation, and Abadie, an officer of Arletty, assert a right to the programs covered by the licenses.

The gravamen of the dispute concerns Foster's contractual entitlement to fees. Foster contends that he is entitled to continuing fees for his work in obtaining the licenses. Appellees counter that Foster has been paid all that he is owed and that any rights Sierra Madre and BSF had to the licenses were voided on December 19, 1995, when a French court ordered the liquidation of Sierra Madre and BSF. After this liquidation and the subsequent French bankruptcy of Sierra Madre and BSF, appellees renegotiated rights to the licenses. As a result of this renegotiation and the voidance of Sierra Madre and BSF's rights, appellees assert that Foster is not entitled to continuing fees.

On September 1, 1999, Foster filed suit against Arletty and Abadie in United States District Court in Greenville, South Carolina, alleging breach of contract and unjust enrichment.[2] Arletty and Abadie

---

1. The companies and individuals involved in these transactions with Foster include: Sierra Madre Phone S.A.R.L. ("Sierra Madre"), a French limited liability company; BSF Phone S.A. ("BSF"), a French corporation; Bernard de Sentenac ("Sentenac"), Foster's cousin and business partner; Arletty, a French company; and Abadie, an officer of Arletty. Foster owned fifty percent of Sierra Madre's shares and forty percent of BSF's shares be-

fore these companies went bankrupt. Sentenac, Foster's business partner, also owned substantial portions of Sierra Madre and BSF.

2. More than two years earlier, on April 10, 1998, Foster filed a complaint with the Commercial Court of Toulouse, France, alleging the same cause of action for breach of contract that Foster filed with the district court.

were served copies of the summons and complaint in both French and English pursuant to the Hague Convention. When appellees did not answer the complaint, the district court clerk filed an entry of default on January 18, 2000. Thereafter, the district court granted Foster's motion for a default judgment pursuant to Fed. R.Civ.P. 55.

Foster then filed an action to enforce the judgment in France. Arletty and Abadie appeared in a French court on July 4, 2000, attacking both the jurisdiction of the district court and the underlying merits of the claim. On August 10, 2000, Arletty and Abadie made an appearance before South Carolina's district court and moved to set aside the default judgment, arguing that it was void for want of personal jurisdiction. *See* Fed.R.Civ.P. 60(b)(4). On October 3, 2000, the district court granted the appellees' Rule 60(b) motion and voided the earlier default judgment, concluding that the court did not have personal jurisdiction over the appellees. It is this order Foster appeals.

In his appeal, Foster raises two main assignments of error: (1) that the district court wrongly determined that the appellees did not waive their personal jurisdiction defense; and (2) that the district court wrongly determined that it lacked personal jurisdiction over the appellees.

## II.

### A. *Waiver*

■ The requirement that a court have personal jurisdiction is grounded in the Due Process Clause. *Insurance Corp.* *of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). As with other due process rights, this requirement is subject to waiver. *Id.,* 456 U.S. at 703, 102 S.Ct. 2099. Thus, a defendant may consent to a court's exercise of jurisdiction either implicitly or explicitly, and "[a] variety of legal arrangements have been taken to represent" this consent. *Id.* For example, "when a defendant appears and challenges jurisdiction, it agrees to be bound by the court's determination on the jurisdictional issue." *Transaero, Inc. v. La Fuerza Aerea Boliviana,* 162 F.3d 724, 729 (2nd Cir. 1998). However, "[a] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Insurance Corp. of Ireland,* 456 U.S. at 706, 102 S.Ct. 2099.

■ Foster contends that appellees' appearance in the French court contesting enforcement of the default judgment constitutes an appearance sufficient to waive their personal jurisdiction defense. Foster conflates the concepts of waiver of a personal jurisdiction defense and *res judicata.* If the French court had reached a final decision on the merits, *res judicata,* not waiver, would have applied.[3] *See Meekins v. United Transp. Union,* 946 F.2d 1054, 1057 (4th Cir.1991). Because the French court never reached a final determination, *res judicata* is inapplicable.

■ In a related argument, Foster asserts that appellees waived their right to assert their personal jurisdiction defense under Fed.R.Civ.P. 12(h)(1) because they

---

The French court eventually ordered *Foster* to pay Arletty 3 ten thousand French francs, a judgment later affirmed on appeal by the French Court of Appeals.

**3.** The court declines to consider whether comity would require this court to give pre- clusive effect to a French court ruling on personal jurisdiction. *See Guinness PLC v. Ward,* 955 F.2d 875, 883 (4th Cir.1992) ("The effect to be given foreign judgments has ... historically been determined by ... principles of comity.").

failed to contest personal jurisdiction after receiving notice. Rule 12(h) contemplates an implied waiver of a personal jurisdiction defense by defendants who appear before a court to deny the allegations of a complaint, but who fail to make personal jurisdiction objections at the time of their appearance. *See, e.g., Bethlehem Steel Corp. v. Devers,* 389 F.2d 44, 46 (4th Cir.1968). Appellees did not appear in the South Carolina action prior to filing their motion to vacate judgment and, as a result, have not waived their personal jurisdiction defense.

■ Finally, Foster argues that appellees' motion for relief of judgment pursuant to Rule 60(b)(4) was not filed within the "reasonable time" required under the rule. Fed.R.Civ.P. 60(b); *McLawhorn v. John W. Daniel & Co., Inc.,* 924 F.2d 535, 538 (4th Cir.1991). As evidence that appellees did not file their 60(b)(4) motion within a reasonable time, Foster cites the four-month delay between the district court's default judgment and the appellees' motion to vacate. The court finds Foster's argument unpersuasive. Given the international status of the parties, the multiple and duplicative lawsuits filed by Foster against appellees, and the fact that the motion was based on a void judgment, the court is unwilling to deem the four-month delay unreasonable. Other circuit courts addressing the issue have concluded that a motion to vacate a void judgment pursuant to Rule 60(b)(4) contains little, if any, time limit. *See Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.,* 953 F.2d 21, 23 (1st Cir.1992) ("A default judgment entered by a court which lacks jurisdiction over the person of the appellee is void and may be set aside at any time pursuant to Fed.R.Civ.P. 60(b)(4)." (internal citation omitted)); *see also Briley v. Hidalgo,* 981 F.2d

246, 249 (5th Cir.1993); *Rodd v. Region Constr. Co.,* 783 F.2d 89, 91 (7th Cir.1986); *V.T.A., Inc. v. Airco, Inc.,* 597 F.2d 220, 224 (10th Cir.1979). We therefore reject Foster's argument that *res judicata* or waiver barred reconsideration under Rule 60.

### B. *Personal Jurisdiction*

■ Stripped to its essence, this case presents the question whether foreign appellees who negotiated, drafted, and executed a contract in France with a dual United States and French citizen residing in South Carolina had such minimum contacts with the forum state to make the exercise of jurisdiction over those appellees consistent with "traditional notions of fair play and substantial justice." *International Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken,* 311 U.S. at 463, 61 S.Ct. 339). Because South Carolina has interpreted its long-arm statute to extend personal jurisdiction to the constitutional limits imposed by federal due process, *Sheppard v. Jacksonville Marine Supply, Inc.,* 877 F.Supp. 260, 265 (D.S.C. 1995), our inquiry must focus on due process. In assessing whether the exertion of personal jurisdiction over appellees exceeds the limits of federal due process, the court recognizes that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Ind. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). We conclude that these unique burdens faced by appellees counsel against the assertion of personal jurisdiction over them.[4]

---

4. The court will treat the appellees as one for the purpose of establishing personal jurisdic-

tion. While separate legal analyses are generally required when personal jurisdiction is

The Supreme Court has made clear that defendants' contacts with the forum state must be "purposeful" to support jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This "purposeful" requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend itself in a forum when the non-resident never purposefully availed itself of the privilege of conducting activities within the forum, thus never invoking the benefits and protections of its laws. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Appellees did little to purposefully avail themselves of the privilege of conducting activities within South Carolina. They merely contacted a French citizen residing in South Carolina for assistance in securing licenses. Appellees have no offices, agents, or employees in South Carolina and do not advertise in South Carolina. *Cf. Asahi,* 480 U.S. at 112–13, 107 S.Ct. 1026 (examining a foreign defendant's purposeful availment of the privileges of conducting business in a forum state by examining, *inter alia,* the location of defendant's offices, advertisement, property, employees, and solicitation). While Foster alleges some fleeting communication by telephone and fax between the appellees and Foster while Foster was in South Carolina,[5] such attenuated contacts with a forum state are insufficient, standing alone, to establish jurisdiction.

Moreover, appellees' conduct and connections with the forum state are not such that the appellee should reasonably anticipate being haled into court in South Carolina. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A review of the facts and circumstances surrounding the contracts reveals both the minimal nature and limited degree of South Carolina's relationship to both the appellees and the transactions. All the parties to the contracts are French citizens; most of the contracts are written in French; the contracts were made operative by final signatures obtained in France; the contracts are governed by French law and even contained arbitration clauses requiring the parties to arbitrate disputes in France; and, the central contract calls for performance in France and other European countries. Indeed, the only South Carolina contact appellees availed themselves of was the assistance of a dual citizen residing in South Carolina. Under such circumstances, it is hardly reasonable for the appellees to anticipate South Carolina courts' exercise of jurisdiction over them.

Finally, even assuming the requisite minimum contacts between South Carolina and appellees, notions of fair play and substantial justice counsel against jurisdiction. Because all the relevant documents received final signature in France, a federal district court in South Carolina would be charged with applying French law if Foster's argument prevails. Such an applica-

---

challenged, the instant case involves numerous factual disputes concerning Abadie's activities in the transactions here involved. Because the court ultimately affirms the district court ruling that personal jurisdiction does not lie, Abadie is not prejudiced by this joint analysis.

5. The court is mindful that the mere absence of physical contacts in a state cannot defeat personal jurisdiction there and that "a sub-

stantial amount of business is transacted solely by mail and wire communications across state lines." *Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. 2174. Nevertheless, appellees' purposefully established contacts, even if meeting the minimal threshold mandated by due process, must still "be considered in light of other factors" to determine whether personal jurisdiction is appropriate. *Id.*

tion would hardly further the "efficient resolution of controversies." *Asahi Metal Ind. Co.*, 480 U.S. at 113, 107 S.Ct. 1026 (quoting *World–Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. 559). Moreover, the burden on the appellees of litigating this dispute in South Carolina is substantial. By contrast, Foster has dual citizenship, speaks fluent French, and owned substantial portions of two French companies that were parties to the disputed contracts. As a result, Foster would not be heavily burdened by traveling to France to litigate this dispute. The court also notes that Foster chose to file his case originally in French court. It was only after losing in France that Foster sought relief in the South Carolina district court. Foster's decision to litigate his claim in France substantially diminishes his interest in a South Carolina forum. While South Carolina undoubtedly has an interest in providing its citizens with a forum in which they can litigate their grievances, Foster's initial choice of a French forum, coupled with the heavy burden appellees would face in litigating this dispute in South Carolina, outweighs the forum state's interests. Considering the lack of purposeful contacts by appellees, the heavy burden on the alien appellees, and the limited interests of Foster and the forum state, the exercise of personal jurisdiction by a South Carolina court over appellees with only tangential connection to the forum state exceeds the bounds of due process. Accordingly, we affirm the judgment of the district court.

### C. *Attorney's Fees*

■ Foster also argues that the district court abused its discretion in denying appellees' request for attorney's fees and costs. A trial court abuses its discretion only if its conclusions are based on mistaken legal principles or clearly erroneous factual findings. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir.

1999). Finding no abuse of discretion, we affirm the district court's denial of attorney's fees.

*AFFIRMED.*