Peter V. TETREV, Plaintiff,

v.

PRIDE INTERNATIONAL, INC., Petrodrill Four, Ltd. A/K/A Petrodrill Construction and Petroleum International PTE, LTD, Defendants.

C.A. No.: 2:04–23161–23.

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 22, 2006.

Coming Ball Gibbs, Jr., Gibbs and Holmes, David B. Marvel, Robertson and Hollingsworth, Jeffrey A. Barnwell, Leath Bouch and Crawford, Charleston, SC, for Plaintiff.

Carol B. Ervin, Nancy Bloodgood, Young Clement Rivers, Anne Louise Ross, Marvin Dewitt Infinger, Haynsworth Sinkler Boyd, Charleston, SC, Stephen B. Crain, Bracewell and Giuliani, Houston, TX, for Defendants.

## ORDER

DUFFY, District Judge.

This matter is before the court on Defendant Petrodrill Four Limited's ("Petrodrill") Motion to Dismiss Plaintiff Peter V. Tetrev's ("Plaintiff" or "Tetrev") cause of action against it for lack of personal jurisdiction. In response, Plaintiff argues that this court has specific jurisdiction over Petrodrill, or, in the alternative, that Petrodrill is subject to this court's jurisdiction pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure.

## BACKGROUND

Petrodrill is an international company organized under the laws of the British Virgin Islands with its registered office in Tortola, British Virgin Islands. Petrodrill is the legal owner of the drilling vessel PRIDE RIO DE JANEIRO. It is undisputed that Petrodrill has never done business in South Carolina, and that the vessel has never been located in South Carolina. The record before the court shows that

Petrodrill has had the following contacts with the United States: In 1998, Petrodrill's predecessor in interest contracted to have the hull which was to become the PRIDE RIO DE JANEIRO constructed in Mississippi. In 1999, Petrodrill entered into an agreement with Petrodrill Engineering N.V. ("PENV"), a corporation incorporated in the Netherlands Antilles, whereby PENV would be the construction manager and would oversee the construction of the hull. In 2001, the Mississippi contractors declared bankruptcy, and Petrodrill ordered the removal of the incomplete hull from the Mississippi port. On April 25, 2002, Petrodrill and Cianbro Corporation of Maine entered into a construction contract to have the hull completed in Portland, Maine. [Def. Mot. to Dismiss, Ex. A, ¶¶ 8, 16–22.] The hull of the PRIDE RIO DE JANEIRO was towed directly from Mississippi to Maine without stopping in any other ports. In 2004, Cianbro completed the PRIDE RIO DE JANEIRO. Thereafter, the vessel was towed to Netherlands Antilles, and then went on to Brazil. [*Id.*] Since then, the PRIDE RIO DE JANEIRO has been used to perform drilling work for Petroleo Brasilieriro S.A. off the coast of Brazil.

Pride International, Inc. ("Pride") is a corporation organized in Delaware and with principle place of business in Texas. Pride was the operator and owner *pro hac vice* of the PRIDE RIO DE JANEIRO. The exact nature of the relationship between Pride and Petrodrill remains unclear at this time; however, it is clear that they are distinct and separate entities. Plaintiff Peter Tetrev is a seaman with experience on oil rigs. Tetrev alleges that in July 2003 he entered into an employment contract with the defendant Pride to work as a second mate of the navigation crew of the PRIDE RIO DE JANEIRO. Tetrev spent several hitches aboard ship, usually for a month at a time. During 2003, Tetrev made several complaints to

Pride regarding the safety and poor conditions of the ship. Further, Tetrev complained about Pride's failure to properly pay him for overtime.

In February of 2004, a new unilateral contract of employment was sent to Tetrev in Charleston, South Carolina. This new contract purported to be between Petroleum International Pte Ltd. ("PIPL") and Tetrev. PIPL, a corporation organized and existing under the laws of Singapore with principal place of business in Monoco, is a wholly owned subsidiary of Pride. Tetrev signed the employment contract and returned it.

On or about April 26, 2004, Pride/PIPL fired Tetrev, allegedly for failing to secure a visa. Tetrev asserts that this accusation was false and was only pretext. Tetrev claims that he was really fired for repeatedly requesting his earned wages and because he had expressed several safety concerns about the PRIDE RIO DE JANEIRO.

On November 4, 2004, Tetrev filed this action in the Court of Common Pleas for Charleston County against Pride alleging (1) breach of contract accompanied by a fraudulent act; (2) intentional misrepresentation; (3) wages pursuant to 46 U.S.C. § 10313, the Seaman's Wages Statute; (4) defamation; (5) outrage; and (6) civil conspiracy. The action was subsequently removed to this court on the basis of diversity jurisdiction.

Pride moved to be dismissed, claiming that it was not subject to personal jurisdiction in South Carolina. On March 29, 2005, this court denied Pride's Motion to Dismiss, concluding that Pride had sufficient contacts with the forum because it had sent mail and communications to Tetrev in South Carolina and had paid Tetrev through direct deposit to an account in South Carolina. Tetrev subsequently amended his complaint to include Defendants PIPL, with whom Tetrev had en-

tered the 2004 employment contract, and Petrodrill, the registered owner of the PRIDE RIO DE JANEIRO. PIPL moved for dismissal of Tetrev's claims for lack of personal jurisdiction and for failing to state a claim upon which relief could be granted. On February 27, 2006, the court issued an Order finding that PIPL was subject to the personal jurisdiction of this court, due to PIPL's contacts with Tetrev within South Carolina. In this Order, the court further found that the 2004 employment contract between Tetrev and PIPL contained an enforceable forum selection clause which specified that Singapore is the exclusive venue for disputes regarding the contract. For this reason, the court dismissed those of Tetrev's claims which arose under the 2004 employment contract. The causes of action now remaining before the court are: (1) defamation, (2) outrage, (3) civil conspiracy, and (4) a claim for those wages not arising under the 2004 employment contract.

Petrodrill answered on May 11, 2006, and reserved the right to challenge personal jurisdiction. Petrodrill now moves for dismissal on the ground that the court lacks personal jurisdiction over it for the remaining claims.

### STANDARD OF REVIEW

Rule 12(b)(2) of the Federal Rules of Civil Procedure is applicable to motions to dismiss for lack of personal jurisdiction. When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir.1997). When the court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need only prove a prima facie case of personal jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir.1989). "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Mei-*

*er ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir.2002). In deciding the jurisdictional issue, the court may consider affidavits, interrogatories, depositions or any other recognized methods of discovery. *Med–Therapy Rehabilitation Servs., Inc. v. Diversicare Corp. of Am.*, 768 F.Supp. 513, 516 (W.D.N.C.1991) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985)); *see also Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.*, 784 F.Supp. 306, 310 (D.S.C.1992). In determining the existence of personal jurisdiction, the court is mindful that it must draw all reasonable inferences from both parties' pleadings, even if they conflict, in the plaintiff's favor. *See, e.g., Meier ex. Rel. Meier*, 288 F.3d at 1269 ("[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff"); *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir.1994) (on a motion to dismiss, the court is charged with "taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff."); *Precept Med. Products, Inc., v. Klus*, 282 F.Supp.2d 381, 385 (W.D.N.C.2003) ("for the purposes of a Rule 12(b)(2) motion, the Court will accept the Plaintiff's version of disputed facts").

### DISCUSSION

To validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. *See Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir.2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of Fourteenth Amendment due process. *See Anita's New Mexico Style Mexican Food, Inc. v.*

*Anita's Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir.2000). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir.2002). "Consequently, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (internal quotation marks omitted).

Under the constitutional inquiry, a court has personal jurisdiction over those persons with sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). The minimum contacts prong is satisfied either through specific or general jurisdiction. *Fortis Corporate Ins. v. Viken Ship Management*, 450 F.3d 214, 218 (6th Cir.2006). General jurisdiction is established "when a defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." [1] *See Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F.Supp. 260, 264 (D.S.C. 1995). Specific jurisdiction subjects the defendant to "suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A plaintiff can establish specific jurisdiction with contacts that are less than continuous than are required to establish general jurisdiction. *Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174. In this case, Tetrev concedes that Petrodrill's contacts with South Carolina are insufficient to support the exercise of general jurisdiction; however, Tetrev asserts that Petrodrill's status as vessel owner and its participation in Pride and PIPL's actions towards Tetrev makes it subject to specific personal jurisdiction in South Carolina.

## A. Specific Jurisdiction in South Carolina

The Fourth Circuit has applied a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant "purposely availed" itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claim arises out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." *Nolan*, 259 F.3d at 215–16 (citing *Helicopteros*, 466 U.S. at 415–16, 104 S.Ct. 1868, and *Burger King Corp.*, 471 U.S. at 472, 476–77, 105 S.Ct. 2174).

The purposeful availment requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated contacts," or of the "unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174. Jurisdiction is proper, however,

---

1. Section 36–2–802 of the South Carolina Code authorizes general jurisdiction over persons who do business or maintain a principal place of business in this state. *Springs Industries, Inc. v. Gasson*, 923 F.Supp. 823, 828 (D.S.C.1996). As the Supreme Court has reasoned, where the defendant "has availed himself of the privilege of conducting business [in the forum state], and because his activities are shielded by 'the benefits and protections' of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 475–476, 105 S.Ct. 2174.

where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state. *Id.* (emphasis in original) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Although the test for purposeful availment can be somewhat imprecise, significant factors typically include: defendant's physical presence in the forum state, the extent of negotiations in the forum state, the extent to which the contract was to be performed in the forum state, and who initiated the relationship. *Mun. Mortgage & Equity v. Southfork Apartments Ltd. P'ship*, 93 F.Supp.2d 622, 626 (D.Md.2000).

■ In this case, it is uncontested that Petrodrill never conducted business in South Carolina and that the vessel PRIDE RIO DE JANEIRO has never been in South Carolina. Petrodrill had no negotiations or contact with Tetrev in South Carolina.[2] Further, Tetrev was never employed by Petrodrill; rather, Tetrev's employment contract was with Pride in 2003 and with PIPL in 2004. Although Tetrev claims that Petrodrill knew that he, a South Carolinian, was working on its vessel, there is no evidence that Petrodrill was involved in the hiring or firing of Tetrev. Also, despite Tetrev's claim that Petrodrill was "intimately involved in the work life of Pride employees," Tetrev offers no concrete evidence as to what this involvement might have been, nor does he claim that this "involvement" caused Petrodrill to have any contacts with the forum state. Accordingly, the only direct contact Tetrev alleges Petrodrill had with the forum is its ownership of the vessel upon which Tetrev, a resident of South Carolina, was employed. Even assuming Petrodrill was aware that Tetrev was a South Carolina resident, Petrodrill's "al-lowing" the operator of its vessel to hire a South Carolina resident to work on its vessel while it was in Maine does not constitute a direct contact between Petrodrill and South Carolina. According to the evidence before the court, Petrodrill did not affirmatively direct any activity towards the forum. Accordingly, Petrodrill has never "purposefully availed" itself of the privileges of conducting business in South Carolina and has not invoked the benefits and protections of its laws for purposes of establishing specific jurisdiction.

Tetrev also asserts that "Petrodrill, Pride, and/or PIPL acted in collusion on this project, which ultimately resulted in Peter Tetrev's termination." [Pl. Opposition to Mot. To Dismiss at 7.] For this reason, Tetrev argues the nature of the relationship between Petrodrill, Pride and PIPL is such that the contacts of Pride and PIPL impute jurisdiction to Petrodrill. The court notes that the contacts within the forum of a party's agent, partner, or joint venturer may, in appropriate circumstances, be attributed to the party for purposes of establishing jurisdiction. *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) ("[T]he parties' relationships with each other may be significant in evaluating their ties to the forum"); *Grand Entm't Group v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) ("[A]ctivities of a party's agent may count toward the minimum contacts necessary to support jurisdiction."). However, contrary to Tetrev's assertions, there is nothing to suggest that Pride acted as the agent or partner of Petrodrill. There is no evidence that Petrodrill asserted any level of control over Pride's business decisions, and indeed, evidence that it did not.[3] As such, Tetrev has not shown that Petrodrill and Pride were part of a joint venture,

---

2. Indeed, there is no evidence that Petrodrill had any contact with Tetrev at all.

3. In his Supplemental Affidavit, Harry Assiter testified that "Petrodrill Four did not recruit,

partnership, or other agency relationship such that the contacts of Pride could be imputed to Petrodrill. *See Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 102 (3d Cir.2004) (denying jurisdiction because "on the allegations and affidavits presented, I cannot infer the existence of a partnership that would provide the basis of attributing the jurisdictional contacts of one appellee to them all"); *see also Saudi,* 427 F.3d at 276 ("[I]t is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity . . . [and the plaintiff] has provided no evidence of the nature of the relationship between [the defendant] and its Texas subsidiary that would justify an exception to this general rule."). As such, the court must consider only Petrodrill's contacts with the forum to determine whether it is subject to this court's jurisdiction. For the reasons stated above, the court finds that Tetrev has not made a prima facie showing of contacts with the forum state; therefore, Petrodrill is not subject to this court's specific jurisdiction.

## B. Rule 4(k)(2)

In the alternative, Tetrev asserts that Petrodrill is subject to the jurisdiction of this court by virtue of its contacts with the United States generally, pursuant to Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) is in essence a federal long-arm statute. *Saudi v. Northrop Grumman Corp.,* 427 F.3d 271, 275 (4th Cir. 2005). It provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or

filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed.R.Civ.P. 4(k)(2). The requirements of Rule 4(k)(2) are met if a plaintiff shows that (1) the claims arise under federal law; (2) the defendant is not subject to the jurisdiction of the courts of general jurisdiction in any state; and (3) the court's exercise of jurisdiction would be consistent with the Constitution and the laws of the United States. *Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory,* 283 F.3d 208 (4th Cir.2002).

In this case, in addition to his state law claims for outrage and civil conspiracy, Plaintiff seeks to recover unpaid wages from Petrodrill pursuant to the Wage Act, 46 U.S.C. § 10313(f), which provides that the "master or owner" of a vessel is subject to wage liability. Federal courts have consistently found maritime law to be federal law. *See, e.g., Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 211, n. 8, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996); *Wells v. Liddy,* 186 F.3d 505, 524–25 (4th Cir.1999) (referring to "federal maritime law"); *World Tanker Carriers Corp. v. M/V Ya Mawlaya,* 99 F.3d 717, 723 (5th Cir.1996) (finding that cases of admiralty arise under federal law for purposes of determining Rule 4(k)(2) jurisdiction). Therefore, because Tetrev's claim under the Wage Act is a claim under federal law, the first part of the Rule 4(k)(2) requirement is satisfied.[4]

---

hire, compensate, afford benefits, control, manage, direct, oversee, or terminate any Pride or PIPL employees." Further, Assiter testified that "[p]ursuant to the terms of the construction management agreement, PENV was responsible for all aspects . . . including the hiring, firing, compensating, and terminating of PENV employees."

4. Tetrev also asserts that the Wage Act itself provides a basis for "mandatory" jurisdiction over Petrodrill. The case law indicates that it is mandatory that federal courts exercise *subject matter jurisdiction* over a claim for wages made in good faith by a seaman under the Wage Act; however, the Wage Act does not provide a basis for *personal jurisdiction* over

However, for jurisdiction over Petrodrill to be proper under Rule 4(k)(2), Tetrev must also demonstrate that Petrodrill is not subject to general jurisdiction in *any* state. *See Saudi v. Northrop Grumman Corp.*, 221 F.R.D. 452, 457–58 (E.D.Va.2004) ("The Plaintiff bears the burden of proving that [the Defendant] is not subject to the general jurisdiction of any state by a preponderance of the evidence.") (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)). Tetrev·has failed to do this. Tetrev, relying on a case from the Fifth Circuit, asserts that Petrodrill's failure to concede that it is subject to the jurisdiction of a particular United States forum satisfies his responsibility to prove element two of Rule 4(k)(2). [Pl. Response to Mot. to Dismiss at 11 (citing *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir.2004); *see also ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir.2001) ("If ... the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).")).] However, such has not been the rule of Fourth Circuit courts, which have held that evidence indicating that a defendant has significant contacts with another state, such that the defendant might be subject to jurisdiction in that state, prevents a plaintiff from satisfying element two of Rule 4(k)(2). *See Saudi*, 221 F.R.D. at 457–58 (finding that

evidence proving that defendant *might* be subject to the general jurisdiction of the courts in New Jersey and Texas prevents plaintiff from satisfying the second element required for jurisdiction under Rule 4(k)(2)); *Hill–Rom Services, Inc. v. Verses Tech., Inc.*, 2006 WL 1540851 (M.D.N.C. June 2, 2006) (holding that because the evidence showed that defendant maintained an office and had subsidiaries in Connecticut, plaintiff had not proven a prima facie case that defendant was not subject to personal jurisdiction in any state); *see also Graduate Management Admission Council v. Raju*, 241 F.Supp.2d 589, 599 (E.D.Va.2003) (holding that where there are *no* specific contacts with any state other than Virginia, and the Virginia contacts are not sufficient to support jurisdiction in Virginia, plaintiff has sufficiently proven that defendant is subject to jurisdiction in no other state). In such circumstances, a plaintiff may not rest on a defendant's failure to concede jurisdiction in another forum, but must offer some affirmative evidence that jurisdiction does not exist in any other United States forum.

In this case, Petrodrill suggests that it may be subject to personal jurisdiction in Maine. The uncontradicted evidence shows that Petrodrill contracted with a Maine corporation for the construction of the vessel in Maine,[5] that the PRIDE RIO DE JANEIRO was located in Maine for almost two years, and that Tetrev traveled

---

an owner where no such jurisdiction would otherwise exist. A fundamental tenant of statutory construction is that courts are to construe a statute to be consistent with and not violative of constitutional principles. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893 (1937) ("The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which

would save it."). For a statute to impose personal jurisdiction over a defendant who does not meet the Due Process requirements of minimum contacts and fundamental fairness would be violative of the Constitution. As such, the rules of statutory construction instruct this court that the Wage Act does not, and cannot, subject Petrodrill to personal jurisdiction in the absence of constitutional requirements.

**5.** Def. Mot. to Dismiss, Ex. A, Affidavit of Harry Assiter ¶¶ 8, 16–22.

to the vessel in Portland, Maine in order to perform under the terms of his employment contract with Pride.[6] Such contacts could be sufficient to confer personal jurisdiction over Petrodrill within the state of Maine. Tetrev offers no evidence or argument showing that these contacts with Maine are insufficient to satisfy jurisdictional requirements. Thus, the court finds that Tetrev has failed to meet its burden of proving Petrodrill is not subject to personal jurisdiction in any state and has therefore failed to satisfy the second element required for jurisdiction under Rule 4(k)(2). Accordingly, Petrodrill's Motion to Dismiss for lack of personal jurisdiction is **GRANTED.**

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED,** that Defendant Petrodrill Four Limited, a/k/a Petrodrill Construction, is **DISMISSED** as a defendant in this action because it is not subject to the jurisdiction of this court.

**AND IT IS SO ORDERED.**

---

**6.** Pl. Response in Opp. to Mot. to Dismiss, Ex. D.