**John B. STARLING, Plaintiff,**

v.

**UNITED STATES of America, Federal Bureau of Prisons, John Doe Nelson, Victor Loranth, Julia E. Berrios, J. Thomas, and L. Berrios, Defendants.**

**C.A. No.: 8:08–888–PMD–BHH.**

United States District Court,
D. South Carolina,
Charleston Division.

May 12, 2009.

John B. Starling, Jesup, GA, pro se.

Beth Drake, U.S. Attorneys Office, Columbia, SC, for Defendants.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

Plaintiff John B. Starling ("Plaintiff"), an inmate at the Federal Correctional Institution ("FCI") in Jesup, Georgia, filed this pro se action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), with jurisdiction under 28 U.S.C. § 1331, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. Plaintiff also filed a Motion for Preliminary Injunction to Pursue Local Treatment pursuant to F.R.C.P. 65(a). The record contains the Report and Recommendation ("R & R") of a United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), which recommends that Plaintiff's Complaint be dismissed. A party may object, in writing, to an R & R within ten days after being served with a copy of that report. 28 U.S.C. 636(b)(1). Plaintiff filed timely objections to the Magistrate Judge's R & R.

### BACKGROUND

■ On March 11, 2008, Plaintiff filed suit pursuant to Bivens against the United States of America, the Federal Bureau of Prisons ("BOP"), Dr. John Doe Nelson ("Nelson"), Dr. Victor Loranth ("Loranth"), Dr. Julia E. Berrios ("J. Berrios"), Dr. Tito Tanguilig ("Tanguilig"),[1] J. Thomas ("Thomas"), and Dr. Luis Berrios ("L. Berrios"). Plaintiff brought suit against Defendants Nelson, Loranth, J. Berrios, Tanguilig, Thomas, and L. Berrios in both their individual and official capacities. Plaintiff alleged that Defendants treated him with "deliberate indifference" in violation of the Eighth Amendment. Bivens allows an action against federal employees for violations of constitutionally protected rights. A Bivens action is the federal analog to a claim brought against state officials under 42 U.S.C. § 1983. Hartman v. Moore, 547 U.S. 250, 255 n. 2, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006).

Plaintiff also alleged that Defendants' actions caused him pain and suffering. This allegation is not actionable under Bivens, but may be actionable under the FTCA. On January 29, 2009, United States Magistrate Judge Bruce H. Hendricks issued an R & R to this court, recommending that Plaintiff's claims, under both Bivens and the FTCA, be dismissed. Plaintiff filed Objections to the R & R on February 23, 2009. Plaintiff bases his claim on a diagnosis of chronic disc disease and moderate degenerative changes in his back. Plaintiff alleges that he was refused prescribed treatment and given ineffective pain medication. Plaintiff's complaints of back pain began in July 2003. Plaintiff was seen by the medical clinic at FCI Marianna nine times between July 2003 and March 2004 for lower back pain. (Defs.' Summ. J. Mot. Ex. 4, ¶ 4.) Plaintiff underwent a CT scan of his lumbar spine on July 16, 2004 at the Jackson Hospital in Marianna, Florida. (Pl.'s Compl. ¶ 10.) The diagnosis was chronic disc disease and moderate degenerative and hypertrophic changes. Id. Subsequently, Plaintiff was transferred from the FCI Marianna to FCI Williamsburg, located in Salters, S.C., and remained there from October 13, 2004 through January 26, 2006.

Plaintiff underwent a myelogram study on December 30, 2004. On January 3, 2005, an orthopedic surgeon in Charleston,

---

1. Tanguilig was voluntarily dismissed by Plaintiff on July 21, 2008 due to an inability to serve him process and Plaintiff's determination that Tanguilig "is not essential to the success of this action." (Pl.'s Consent to Dismissal of Def. Tito Tanguilig ¶ 3).

South Carolina, recommended that Plaintiff: (1) periodically receive therapeutic injections such as epidural steroids; (2) undergo physical therapy; (3) participate in limited ambulation of between 1/8 and 1/4 of a mile; and (4) undergo possible surgery. *Id.* at ¶ 11. However, the surgeon noted that surgical results were somewhat unpredictable and that it should only be considered if all other treatment failed. *Id.* Following this report, on January 27, 2005, Loranth submitted a Medical/Surgical and Psychiatric Referral Request to Nelson, the Chief of Health Programs in Washington, D.C. (Defs.' Summ. J. Mot. Ex. 3). Loranth requested the transfer because he believed that it would enable Plaintiff to participate in the recommended physical therapy program. *Id.* at Ex. 5, ¶ 8. Nelson denied the request on February 8, 2005 and recommended that Loranth pursue local treatment for Plaintiff. (Pl.'s Compl. ¶ 14).

From July 5, 2005 through June 25, 2007, Plaintiff filed multiple requests for administrative remedies,[2] all of which were denied. *Id.* at ¶¶ 17–24. During this time, Plaintiff was transferred to FCI Bennettsville in South Carolina on January 26, 2006. Since his arrival at FCI Bennettsville, Plaintiff has been seen on sixteen occasions for lower back pain complaints. (Defs.' Mot. Summ. J. Ex. 3, 93–125). Examination by an orthopedic surgeon on August 2, 2006 resulted in a finding of minimal pain and discomfort and a recommendation of continued conservative treatment. *Id.* at 138–39.

Plaintiff alleges that he was refused prescribed treatment, due to Nelson's transfer request denial, and given ineffective pain mediation, which caused him pain and suffering. In contravention of a conditioned recommendation by a specialist, Plaintiff alleges that he needs surgical relief. Having exhausted his administrative remedies, Plaintiff filed this *Bivens* and FTCA action. Defendant filed a Motion to Dismiss, or in the Alternative for Summary Judgment alleging that the court lacks subject matter jurisdiction and Plaintiff has failed to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

### I. Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). This court is charged with conducting a *de novo* review of any portion of the R & R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portions of the report and recommendation to which objections are made and the basis for those objections. *Id.* After a review of the entire record, the R & R, and Plaintiff's objections, the court finds that the Magistrate Judge summarized the facts and applied the correct principles of law. Accordingly, the R & R is adopted in full and specifically incorporated into this Order.

### II. Motion to Dismiss, or in the Alternative for Summary Judgment

A Rule 12(b)(6) motion should be granted only if, after accepting all well pleaded allegations in the complaint as true, it

---

**2.** Plaintiff's requested remedies included back surgery, evaluation by a back specialist, medical treatment and medication for back pain, physical therapy, and five million dollars. (Pl.'s Compl. ¶¶ 18–20, 22–24).

appears certain that Plaintiff cannot prove any set of facts in support of its claims that entitles it to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir.1972). If, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Fed. R.Civ.P. 12(b).

## DISCUSSION

### I. Plaintiff's *Bivens* Claim

#### A. Qualified Immunity

Initially, Defendants allege, and the R & R agrees, that under a *Bivens* claim, this Court lacks jurisdiction over them in their official capacities and that sovereign immunity deprives this court of subject matter jurisdiction over the BOP and the United States. The purpose of *Bivens* in allowing suit against federal officers in their individual capacity is to deter the individual officer from committing constitutional violations, not to deter the agency. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69–70, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). Consequently,

> [i]f a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending *individual* officer, subject to the defense of qualified immunity. The

> prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the *individual*.

*Id.* at 72, 122 S.Ct. 515 (emphasis added).

█ Here, because *Bivens* does not extend to causes of action against the BOP or the United States of America, Plaintiff's *Bivens* claims against both are dismissed. Furthermore, Plaintiff asserts a *Bivens* action against the remaining Defendants in their official and individual capacities. The claims against the remaining Defendants in their official capacities are also dismissed. Therefore, Plaintiff's remaining *Bivens* claims are those against Defendants Nelson, Loranth, J. Berrios, Thomas, and L. Berrios only in their individual capacities.

#### B. Jurisdiction

##### i. Defendant Thomas

Defendant Thomas alleges that he is entitled to absolute immunity from a *Bivens* action under the Public Health Service Act, 42 U.S.C. § 233(a), which provides that an FTCA suit against the United States is the exclusive remedy for tortious acts committed by Public Health Service ("PHS") officers and employees in the course of their medical duties. Specifically, § 233(a) states that the FTCA is the exclusive remedy for actions against members of the Public Health Service:

> for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions ..., by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, [and] shall be exclusive of any other civil action or proceeding by reason of

the same subject-matter against the officer or employer.

*Id.* According to § 233(g)(1)(A), an officer or employee of the PHS is "any officer . . . or employee . . . who is a physician or other licensed or certified health care practitioner." Here, Thomas established his status as a PHS officer when he stated in a declaration that "[d]uring the time period referenced in the complaint, as a member of the Public Health Service I was assigned to the Federal Correctional Institution (FCI) Williamsburg, South Carolina, and held the positions of Assistant Health Services Administrator and Health Systems Specialist." (Defs.' Mot. Summ. J. Ex. 7, ¶ 1).

■ A *Bivens* cause of action:

may be defeated in a particular case . . . in two situations. The first is when defendants demonstrate special factors counselling hesitation in the absence of affirmative action by Congress. The second is when defendants show that Congress has provided an alternative remedy which is explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective.

*Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (emphasis in original) (citing *Bivens,* 403 U.S. at 396–97, 91 S.Ct. 1999). *Carlson* found that the FTCA did not preempt *Bivens* because neither defeating circumstance existed. *Id.* at 19, 100 S.Ct. 1468. Specifically, the *Carlson* Court found that the FTCA and *Bivens* were "parallel, complementary causes of action . . . [t]his conclusion is buttressed by the significant fact that Congress follows the practice of explicitly stating when it means to make FTCA an exclusive remedy." *Id.* at 20, 100 S.Ct. 1468 (citing 42 U.S.C. § 233(a), which Thomas argues provides him absolute immunity in this case, as an instance in which Congress intended to make the FTCA an

exclusive remedy). The *Carlson* Court further noted that an FTCA remedy was not an equally effective substitute for a *Bivens* remedy. *Id.* at 21–23, 100 S.Ct. 1468.

■ The present case differs from *Carlson* because here, Defendant Thomas argues that the FTCA preempts a *Bivens* remedy based on § 233(a), rather than based on the FTCA itself. Therefore, the issue for this Court to decide with regard to Defendant Thomas's assertion of absolute immunity is whether Congress intended to use § 233(a) to provide the FTCA as an alternative remedy to *Bivens* and explicitly declared it to be a substitute for recovery directly under the Constitution, viewing the FTCA as equally effective as *Bivens.* This Court holds that it did not.

The Ninth Circuit recently addressed this exact issue in *Castaneda v. United States,* in which PHS defendants also argued that they had absolute immunity from a *Bivens* action under § 233(a). 546 F.3d 682, 687 (2008). The *Castaneda* court concluded that § 233(a) does not preempt *Bivens* relief. *Id.* at 691. *Castaneda* correctly stated that

*Carlson* established a two-part test for express *Bivens* preemption: Congress must [1] provide an alternative remedy that is "explicitly declared to be a *substitute* for" *Bivens* (rather than a complement to it) *and* [2] Congress must view that remedy as "equally effective." Both these elements must be present for a court to find the *Bivens* remedy expressly displaced.

*Id.* at 689 (emphasis in original) (citing *Carlson,* 446 U.S. at 18–19, 100 S.Ct. 1468). After reiterating that *Carlson* expressly held that Congress does not view the FTCA as providing relief equally effective as that of *Bivens,* the court proceeded to also find that Congress, through § 233(a), did not explicitly declare the FTCA to be a

substitute for *Bivens. Id.* at 689, 691–92. *Castaneda* cited three bases for this finding: (1) statutory text, (2) legislative history, and (3) context. *Id.* at 692–99. First, the plain text of § 233(a) does not mention the Constitution or recovery directly under it. Furthermore, *Bivens* relief did not even exist at the time § 233(a) was enacted, as that case was not decided until the year after § 233(a) was passed into law, thereby precluding any intention of Congress to substitute FTCA relief for *Bivens. Id.* at 692 (citing Emergency Health Personnel Act of 1970, Pub. L. No. 91–623, 84 Stat. 1868 (1970); *Bivens,* 403 U.S. 388, 91 S.Ct. 1999 (1971)). Second, *Castaneda* found that "the legislative history of § 233(a) ... reveals that Congress's exclusive concern was with common law malpractice liability." *Id.* at 693 (basing such a conclusion on congressional floor statements and the section title of "Defense of Certain Malpractice and Negligence Suits"). Third, *Castaneda* found that the context of the statute in granting PHS employees immunity from state negligence actions served a very real and common purpose, but that "PHS Defendants ... have provided no explanation for why Congress would want to provide these persons with the privilege, shared with no other federal employee, to *violate the Constitution* without consequence." *Id.* at 698 (emphasis in original).

Finally, the *Castaneda* court addressed the fact that its conclusion conflicted with the Second Circuit case of *Cuoco v. Moritsugu,* 222 F.3d 99 (2000), which Defendants rely upon to support their proposition that the FTCA preempts a *Bivens* claim for PHS officers. In *Cuoco,* "the court relied on dicta in *Carlson* which it read to imply that § 233(a) was an expressly declared substitute for *Bivens." Castaneda,* 546 F.3d at 699 (referring to *Carlson's* citation of § 233(a) as an example of when Congress intended to make the FTCA an exclusive remedy). *Castane-*

*da* concluded, and this Court agrees, that the "better reading of the Court's dictum in *Carlson* is that just as Congress, through certain statutes, made the FTCA a substitute remedy for medical malpractice actions, so it could—but did not—declare the FTCA to be a substitute remedy for federal constitutional claims." *Id.* at 700 (noting further that *Cuoco* failed to discuss whether the FTCA remedy was "equally effective," a necessary pre-condition for finding a statutory substitute to *Bivens* under *Carlson* ). This Court notes that while the Court in *Carlson* did explicitly say in a citation in dicta that § 233(a) was an example of explicit Congressional preemption, the accompanying parenthetical explanation was "(*malpractice* by certain Government health personnel)," 446 U.S. at 20, 100 S.Ct. 1468 (emphasis added), which shows that the *Carlson* Court's understanding was that § 233(a) had preempted state law tort causes of action, but not necessarily a claim for relief under *Bivens* on the grounds of a constitutional violation.

Accordingly, this Court agrees with the reasoning of *Castaneda* and holds that § 233(a) does not grant Thomas absolute immunity because it does not allow the FTCA to preempt a *Bivens* claim. Therefore, Defendant Thomas is not dismissed and Plaintiff maintains a *Bivens* cause of action against him in his individual capacity.

### ii. Personal Jurisdiction over Defendant Nelson

Initially, this Court notes that Defendants argue that it does not have personal jurisdiction over Nelson *and* Tanguilig, but, as stated earlier, Tanguilig has been voluntarily dismissed from this action. When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.,* 124 F.3d 619, 628

(4th Cir.1997). When the court addresses the issue of jurisdiction on the basis of pleadings and supporting legal memoranda without an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker,* 886 F.2d 673, 675 (4th Cir.1989). In deciding such a motion, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* at 676.

To validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan,* 259 F.3d 209, 215 (4th Cir.2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of Fourteenth Amendment due process. *Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.,* 201 F.3d 314, 317 (4th Cir. 2000). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause. *Foster v. Arletty 3 Sarl,* 278 F.3d 409, 414 (4th Cir.2002). Thus, the scope of the court's inquiry is whether Defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). The minimum contacts prong may be satisfied either through specific or general jurisdiction. *Tetrev v. Pride Intern., Inc.,* 465 F.Supp.2d 555, 558–563 (D.S.C.2006) (citation omitted).

■■ The analytical framework for determining whether minimum contacts exist differs according to which type of personal jurisdiction—general or specific—is alleged. *See generally ESAB Group v. Centricut,* 126 F.3d 617, 623–24 (4th Cir.1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over that defendant if it purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). However, when the cause of action does not arise out of the defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. *Id.* at 416, 104 S.Ct. 1868. Here, Plaintiff contends that Nelson is subject to both specific and general jurisdiction in South Carolina. Thus, this Court must determine whether Nelson has contacts sufficient to subject him to specific and/or general jurisdiction in South Carolina.

■ The Fourth Circuit has applied a three-part test when evaluating the appropriateness of exercising specific jurisdiction: (1) whether and to what extent the defendant "purposely availed" itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claim arises out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." *Nolan,* 259 F.3d at 215–16 (citing *Helicopteros,* 466 U.S. at 415–16, 104 S.Ct. 1868, and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The purposeful availment requirement of specific jurisdiction "ensures that a defendant will not be hauled into a jurisdiction

solely as a result of 'random,' 'fortuitous,' or 'attenuated contacts,' or of the 'unilateral activity of another party or a third person.' " *Tetrev*, 465 F.Supp.2d at 559 (quoting *Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174). Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant that create a "substantial connection" with the forum state. *Id.* (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

When compared to the necessary proof for specific jurisdiction, "the threshold level of minimum contacts to confer general jurisdiction is significantly higher." *Harrell v. Duke Univ. Health Sys., Inc.*, 2008 WL 80122, *3 (D.S.C.2008) (citation omitted). A state may assert general jurisdiction over a defendant if the "plaintiff's cause of action does not arise from the defendant's contacts with the forum state." *Id.* South Carolina's general jurisdiction statute states that "[a] court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, doing business, or maintaining his or its principal place of business in, this State as to any cause of action." S.C.Code Ann. § 36–2–802 (2003). Essentially, the plaintiff must prove that defendant's contacts are "continuous and systematic," and "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." *Harrell*, 2008 WL 80122 at *3 (quoting *Helicopteros*, 466 U.S. at 415–16, 104 S.Ct. 1868, and *Int'l Shoe Co.*, 326 U.S. at 318, 66 S.Ct. 154).

More specific to this case, courts have held that mere allegations relating to a BOP official's decisions regarding an inmate's administrative appeal outside the forum state, and other supervisory activities over a facility inside the forum state, are insufficient to establish personal jurisdiction. *See, e.g., Murrell v. Chandler*,

2007 WL 869568, at *4 (E.D.Tex. Mar. 21, 2007) (granting defendants' motion to dismiss BOP's Administrator of National Inmate Appeals, located in Washington, D.C., for lack of personal jurisdiction, stating that "plaintiff's allegations that [defendant] decided his administrative appeals outside the state of Texas is not sufficient contact to support a finding of personal jurisdiction."); *Jones v. Hawk–Sawyer*, 2000 WL 34203850, at * 2 (N.D.Tex. Oct. 19, 2000) (dismissing claim against director of BOP, located in Washington, D.C., because "[p]laintiff's allegations that [defendant] decided two administrative appeals outside the state of Texas and his conclusory allegations of conspiracy are not sufficient contact to support a finding of personal jurisdiction."); *see also Hill v. Pugh*, 75 Fed.Appx. 715, 719 (10th Cir.2003) (dismissing claims against BOP Regional Director, located in Kansas, and BOP Director, located in Washington, D.C., for lack of personal jurisdiction, holding that it was "not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state [Colorado]."); *Johnson v. Rardin*, 1992 WL 9019, at *1 (10th Cir. Jan. 17, 1992) (dismissing BOP Director and Regional Counsel for lack of minimum contacts where their only involvement was reviewing inmate's appeals and occasionally advising prison staff members in forum state); *Durham v. Lappin*, 2006 WL 2724091, at *5 (D.Colo. Sept. 21, 2006) (dismissing claim against BOP Director, National Inmate Appeals Administrator and BOP Regional Director, holding that their contacts with the forum state "were completely fortuitous, resulting from the fact that the plaintiff—to whom they were responding when answering grievances—was located in Colorado."); *Thornton v. Quinlan*, 864 F.Supp. 90, 92 (S.D.Ill. 1994) (declining to exercise jurisdiction

over director of BOP whose only contacts with Illinois were in his official capacity).

■ As stated, Plaintiff has the burden of establishing grounds for the court to exercise personal jurisdiction over Nelson. Here, Plaintiff has failed to set forth any facts which would establish personal jurisdiction over this Defendant. First, Plaintiff fails to establish specific jurisdiction because he does not allege facts which would support a finding of Defendant having minimum contacts with South Carolina. Plaintiff merely states that, "[w]hen the defendants became willful participants in the constitutionally unlawful act ... they have associated themselves in the forum state ... Defendant Nelson made the decision that ultimately determined the plaintiff[']s fate. He, Nelson called the shot." (Pl.'s Resp. to Defs.' Mot. to Dismiss, 13). This argument does not satisfy the three-part test from *Nolan.* The fact that Defendant, a resident of Washington, D.C., made a decision in his official capacity concerning an inmate located in South Carolina, without more, does not prove that Defendant purposely availed himself of the privileges of South Carolina. The only alleged contact with the forum state is this decision, which is attenuated at best and ultimately insufficient to confer specific jurisdiction. Furthermore, it also does not show that Plaintiff's claim arises out of activities related to the forum or that the exercise of such jurisdiction is "reasonable."

Additionally, because the threshold for minimum contacts for general jurisdiction is higher than that of personal jurisdiction, Plaintiff also fails to meet this standard. Plaintiff points to nothing establishing that Defendant maintains "continuous and systematic" contacts with South Carolina. Finally, Plaintiff attempts to distinguish his case from the cited BOP cases by arguing that "Defendant Nelson did not determine a decision in an inmate appeal, he violated

a law." (Pl.'s Obj. to R & R at 17). This unsupported allegation, however, proves neither that Nelson had continuous or systematic contacts with South Carolina nor that he has conducted any activities in or established any contacts with South Carolina. In fact, Plaintiff has not alleged any claims against Nelson that occurred in South Carolina, instead merely that they occurred while he was located in South Carolina. Therefore, this Court may not assert personal jurisdiction over Defendant Nelson and he should be dismissed.

Accordingly, Plaintiff's remaining *Bivens* claims are those against Defendants Loranth, J. Berrios, Thomas, and L. Berrios only in their individual capacities.

### C. Merits of Bivens Claim

■ Plaintiff brings a *Bivens* claim alleging that Defendants "denied the Plaintiff the 'standard of care' for his particular back condition with 'deliberate indifference' in violation of the Eighth Amendment." (Pl.'s Compl. ¶ 26.) In a *Bivens* proceeding, liability is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh,* 275 F.3d 391, 402 (4th Cir.2001). Therefore, to establish liability in a *Bivens* case, the plaintiff must specify the acts taken by each defendant which violated his constitutional rights. *Searcy v. NFN Skinner,* 2008 WL 5248420, *8 (D.S.C.2008) (citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)). It is well established that deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To prove a claim of deliberate indifference to a serious injury under the Eighth Amendment, a plaintiff must show that a defendant's "action or inaction [1]

result[ed] in or creat[ed] a sufficiently serious risk of a deprivation that objectively results in denial of the 'minimal civilized measure of life's necessities' and [2] a 'sufficiently culpable state of mind.'" *Winfield v. Bass,* 106 F.3d 525, 531 (4th Cir. 1997) (quoting *Farmer v. Brennan,* 511 U.S. 825, 831–34 & n. 2, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

 In order to be liable for deliberate indifference, the plaintiff must prove that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also that he had drawn the inference. *See Young v. City of Mount Ranier,* 238 F.3d 567, 575–76 (4th Cir.2001) ("Deliberate indifference requires a showing that the defendants ... actually knew of and ignored a detainee's serious need for medical care."). A medical need or injury is serious "if it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Miller v. Powers,* 2009 WL 255983, *6 (D.S.C.2009) (internal quotations marks and citation omitted). Furthermore, the denial or delay in treatment must "cause[ ] the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann,* 906 F.Supp. 1025, 1037 (E.D.Va.1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987)). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir.1975). Deliberate indifference is a high standard requiring a showing of conduct by defendant that "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990). Additionally, "mere negligence or

malpractice does not violate the Eighth Amendment." *Id.*

 Initially, the Court notes that Plaintiff fails to allege any facts against Defendants J. Berrios, L. Berrios, and Thomas establishing personal involvement of these defendants in the alleged violation of his constitutional rights. In fact, after listing Defendants' names in his complaint under "Parties," Plaintiff never mentions J. Berrios, L. Berrios, or Thomas again. This absence of any allegation of personal involvement fails to prove that any action or inaction on the part of these three Defendants resulted in the deliberate indifference of Plaintiff's illness in violation of the Eighth Amendment. Therefore, these Defendants should be dismissed.

 Plaintiff's remaining *Bivens* claim is against Defendant Loranth. Plaintiff's first allegation against Loranth is that he gave Dr. Edwards only post myelogram CT images and not the myelogram films for review on March 22, 2005, and that this made Dr. Edwards' diagnosis incomplete. Although Dr. Edwards noted that he reviewed the myelogram images instead of the films, he did not indicate that this hindered his diagnosis in anyway. Dr. Edwards recommended that "if his neurologic function remains stable, then I would tend to treat him conservatively as you apparently have been doing." (Pl.'s Compl. ¶ 15.) The assertion that Loranth failed to give Dr. Edwards a different set of myelogram images, therefore, had no impact on Edwards' diagnosis and recommendation and is insufficient to show deliberate indifference. Furthermore, Plaintiff fails to establish how this allegedly incomplete diagnosis caused him handicap or permanent loss.

 Plaintiff's other allegations against Loranth include ignoring specialist's recommendations, dispensing inferior

pain medication, and refusing prescribed treatment. The specialist recommendations to which Plaintiff refers are those of receiving epidural injections, a wedge pillow, physical therapy, and possible surgery. As an initial matter, the Court notes that these recommendations were merely that—recommendations. Loranth was neither bound by these nor was he deliberately indifferent for choosing a different treatment plan than what Plaintiff desires. Also, although Plaintiff states in his Objections to the R & R that he "has never ... received a wedge pillow," (Pl.'s Obj. to Magistrate's R & R at 6), in an inmate request Plaintiff made while at Bennettsville, he wrote "[c]ould you please replace the wedge pillow I was not allowed to packout and you said you would ... get me another one." Pl.'s Resp. to Defs.' Mot. to Dismiss, Ex. 1 C. Plaintiff was also provided with and began some physical therapy services, including stretching, walking, and riding a stationary bicycle. (R & R at 20). Loranth did not provide Plaintiff with the recommended epidural injections. However, Plaintiff instead received anti-inflammatory drugs and pain medications. Plaintiff's allegations that medication was a less effective treatment than epidural injections is purely speculative. Moreover, as noted in *Russell*, the mere fact that a prisoner may believe that he required a different form of treatment does not establish a constitutional violation. Finally, Plaintiff's complaint of not receiving surgery provides no basis for a deliberate indifference claim. Surgery was recommended "as a *possible* treatment option but it would be a fairly large undertaking and somewhat unpredictable in its results and should only be considered if all other measures fail." (Pl.'s Compl. ¶ 12). Under *Miller*, a medical need is serious only if it is diagnosed as mandating treatment. Surgery did not constitute mandated treatment for Plaintiff. Accordingly, Plaintiff failed to establish that Loranth

was deliberately indifferent to any serious medical need in violation of the Eighth Amendment.

Accordingly, Plaintiff's *Bivens* claims against Defendants J. Berrios, L. Berrios, Thomas and Loranth are dismissed.

## II. FTCA Action

■ Claims of negligence or malpractice, can, however, support a cause of action under the FTCA. The FTCA is a significant exception to the doctrine of sovereign immunity, which holds that the government is typically not subject to tort lawsuits. *See, e.g., Perkins v. United States*, 55 F.3d 910, 913 (4th Cir.1995) ("As sovereign, the United States enjoys immunity from suits for damages at common law."). The FTCA gives federal district courts jurisdiction "to hear civil actions against the United States for money damages for injuries caused by the negligent or wrongful acts or omissions of government employees while acting within the scope of their employment." *Id.* The FTCA does not, however, create a cause of action against individual defendants acting within the scope of government employment. The cause of action created by the FTCA must be exclusively brought against the United States government. 28 U.S.C. § 2679(b) ("The remedy against the United States provided by [FTCA] ... is exclusive."); *see also McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir.1998) ("To sue successfully under the FTCA, a plaintiff must name the United States as the sole defendant.").

■ Under the FTCA, federal courts are directed to determine liability based upon an analysis under state law. Since the medical negligence allegedly occurred in South Carolina, the substantive law of South Carolina controls. *See United States v. Neustadt*, 366 U.S. 696, 706 n. 15, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). Ac-

cordingly, the claims relating to care provided should be evaluated in accordance with South Carolina Tort Law.

■ In South Carolina, a plaintiff alleging a medical malpractice claim must prove by a preponderance of the evidence the following:

(a) the recognized and generally accepted standards, practices, and procedure in the community which would be exercised by competent physicians in the same specialty under the same circumstances;

(b) that the physician or medical personnel negligently deviated from the generally accepted standards, practices, and procedures;

(c) that such negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and

(d) that the plaintiff was injured.

*Dumont v. United States*, 80 F.Supp.2d 576, 581 (D.S.C.2000) (internal citations omitted). Furthermore, the plaintiff must establish by expert testimony both the "standard of care and the defendant's failure to conform to the required standard, unless the subject matter is of common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct." *Martasin v. Hilton Head Health Sys. L.P.*, 364 S.C. 430, 613 S.E.2d 795, 799 (2005) (citation omitted). In South Carolina, the burden of proof in a medical malpractice case is entirely on the plaintiff. *Dumont*, 80 F.Supp.2d at 581

■ Here, Plaintiff has failed to establish a claim under the FTCA. Plaintiff has not set forth any evidence, aside from his own conclusory allegations, that Defendants failed to conform their conduct to a required standard or were negligent. Plaintiff failed to establish any causal link between the alleged behavior and any injury. Ultimately, Plaintiff failed in his bur-

den of proof. Therefore, Plaintiff's FTCA claims are dismissed.

## III. State Law Claims

To the extent that Plaintiff's complaint states additional claims under state law, since there is no remaining independent basis for federal jurisdiction, this Court declines to exercise supplemental jurisdiction over the claims as summary judgment is granted for Defendants on Plaintiff's federal claims. *See* 28 U.S.C. § 1367(c)(4).

### *CONCLUSION*

For the foregoing reasons this Court dismisses both Plaintiff's *Bivens* and FTCA claims and **ORDERS** that Defendants' Motion to Dismiss, or alternatively, for Summary Judgment be **GRANTED.** Plaintiff's Motion for Preliminary Injunction is **DENIED** as moot.

### AND IT IS SO ORDERED.